**UNITED STATES of America,**

v.

**OLIN MATHIESON CHEMICAL CORPORATION, Philipp Bauer Co., Inc., Kenneth B. Bauer, Herbert G. Wolf and Far East International Corp., Defendants.**

United States District Court
S. D. New York.
Sept. 15, 1964.

Robert M. Morgenthau, U. S. Atty.
for Southern District of New York,

Richard A. Givens, Asst. U. S. Atty., of counsel, for United States of America.

Cravath, Swaine & Moore, New York City, John W. Barnum, New York City, of counsel, for defendant Olin Mathieson Chemical Corp.

Simpson, Thacher & Bartlett, New York City, Joseph J. Ackell, New York City, of counsel, for defendants Herbert G. Wolf and Far East International Corp.

HERLANDS, District Judge.

Defendant Olin Mathieson (hereinafter Olin) has moved for an order to enforce a subpoena issued pursuant to Rule 17(c) of the Rules of Criminal Procedure, demanding of the United States Attorney a large number of documents in its possession. The Government has countermoved to modify paragraph 1 of the subpoena and to quash paragraphs 2 and 3.

■ The basic issue involved in paragraph 1 of the subpoena is, according to the purposes of Rule 17(c), see generally Bowman Dairy Co. v. United States, 341 U.S. 214, 71 S.Ct. 675, 95 L.Ed. 879 (1951); United States v. Iozia, 13 F.R.D. 335 (S.D.N.Y.1952) (Weinfeld, J.), to arrive at an accommodation between the competing interests of the Government to be secure in its internal functioning and to avoid undue administrative inconvenience, on the one hand, and of the defendant to obtain evidence necessary for the preparation of its defense, on the other. Such accommodation is within the court's discretion.

The basic issue involved in paragraphs 2 and 3 of the subpoena is to determine whether the prerequisites outlined in a memorandum and order by Judge McGohey (hereinafter Order), filed July 15, 1964, have been met.

For the reasons given below, the following is ordered:

1. Paragraph 1 will be enforced with the proviso that no documents received by the United States Attorney after August 31, 1963 need be produced.

2. Paragraph 2 will be quashed.

3. Paragraph 3 will be enforced.

The subject matter of the present subpoena, without exception, has been carefully considered previously in the memorandum and order by Judge McGohey. Olin now attempts, with this subpoena, to comply with the terms of that order. It is the court's present function to test that compliance and not to provide a forum for relitigating, or litigating for the first time, matters which were or should have been fully pursued in the prior proceedings before Judge McGohey. As to those issues actually considered by Judge McGohey, his order will be dispositive.

## I. Paragraph 1
### A. Limitation Period

■ The prior proceeding before Judge McGohey involved two subpoenas: one addressed to the United States Attorney containing no limitation period, of which three of the four paragraphs were quashed and one enforced; and a second addressed to the Agency for International Development (AID) containing a limitation period of January 1, 1957 to August 31, 1963, of which nine paragraphs were enforced, one as modified, and eight paragraphs quashed. All nine of these enforced paragraphs are repeated, *in haec verba,* in the nine demands made in paragraph 1 of the present subpoena. The rationale for Judge McGohey's enforcing these demands as addressed to AID apply with equal force as addressed to the United State Attorney. Logic, therefore, compels that the limitation period be no narrower than that incorporated in Judge McGohey's order—January 1, 1957 to August 31, 1963. The Government's contention that the only reasonable limitation period is that of the indictment, March 1, 1958 to March 4, 1963 (a contention at no time urged before Judge McGohey) is rejected.

Olin properly asserts that the date limitation applied to the AID subpoena need not control the present subpoena since the original subpoena to the United

States Attorney contained no date limitations whatever. Nor, however, is the absence of any limitation controlling since the only portion granted of the original subpoena contained certain "built-in" limitations. See Government Reply Memorandum, at 4. It is up to this court, therefore, to decide whether any period broader than January 1, 1957 to August 31, 1963 is appropriate.

Olin contends, with merit, that agency practices and interpretation dating from the time the regulations in question were adopted—at the time of the Marshall Plan in 1948 and 1949, Olin Memorandum, at 6 —, through the indictment period, would provide a valuable source of evidence in its effort to prove the meaning of the regulations at the time of the indictment. The Government neither contests this nor offers a counter-argument favoring some other beginning of the period. Adoption of the regulations, therefore, provides a reasonable date for commencement of the period.

It is only the meaning of the regulations during the indictment period that is at issue; and, although agency interpretation subsequent to that date may be relevant in ascertaining the prior meaning, six months of such subsequent interpretation would appear to exhaust that source of evidence. August 31, 1963, the date used by Judge McGohey, is therefore a reasonable date for termination of the period. This date is without prejudice to Olin's seeking another Rule 17 (c) subpoena duces tecum to produce *at trial* should "to-date" documents be deemed necessary to its defense.

B. "Official" Documents

The Government contends that the documents demanded in paragraph 1 be limited to "official" AID statements. The subparagraphs in issue are (b) through (e), and (i). Judge McGohey's basis for

enforcing the parallel demands of the AID subpoena was that "where a regulation is vague or doubtful, its *interpretation by the agency* authorized to enforce it * * * is relevant to its meaning," Order, at 7 (emphasis added), and because of relevancy to Olin's intent. A comparison of Judge McGohey's enforcement of paragraph 12 ("opinions of AID *officials,*" Order, at 10 [emphasis added]) with his quashing of paragraph 14 ("opinions of * * * *personnel,*" ibid. [emphasis added]) reveals that only interpretations of officials or interpretations adopted by the agency would be "interpretation by the agency" and therefore relevant.

The Government, in this regard, makes no objections as to those documents in the United States Attorney's possession which are merely duplicative of those which AID must produce.[1] The Government contends, however, that requests for advice or other communications between AID and the United States Attorney, *non*-duplicative documents,[2] would fall into the forbidden category of "personnel opinion." The Government also raises the issue of attorney-client privilege. AID employees with authority to communicate with the United States Attorney as to the interpretation of AID regulations constitute "AID officials" within the meaning of Judge McGohey's order, see Order, at 10, enforcing paragraph 12. Interpretations contained in such communications would therefore be relevant as "agency interpretation" and within the bounds of Judge McGohey's enforcement order. Although such communications would appear to contain the necessary ingredients of attorney-client privilege, Jox, Attorney-Client Privilege —Its Application to a Corporate Client, 152 N.Y.L.J., No. 45, Sept. 1, 1964, p. 1, col. 4, at 4, col. 7, privilege is a defense

---

1. Olin concedes that such duplicative documents need not be turned over by the United States Attorney unless they contain handwritten notations. To so qualify, the notations must be those of AID officials and not those of the U. S. Attorney.

2. But see discussion infra.

properly raised at the time for production and not now.

■ Another reason for compelling production of relevant communications by AID to the United States Attorney, at least as to those non-privileged, is that copies of such communications in AID's files must be produced pursuant to Judge McGohey's order. As to these, there is no limitation as to "official" documents. Nor was any such limitation sought.

## C. Indictment 63 Cr. 217

■ The Government contends that only documents obtained in connection with the present indictment, 63 Cr. 217, should be ordered produced. The burden placed on the Government in producing relevant documents obtained in connection with other indictments based on facts very similar to those of the present indictment should not be too onerous. In view of the alleged importance of such documents to Olin, see Olin Memorandum, at 9, they are ordered produced.

## II. Paragraph 2

■ Paragraph 1 of Olin's original subpoena to the United States Attorney was quashed by Judge McGohey because it demanded non-evidentiary material and sought, in effect, a general discovery. Order, at 4. The original paragraph, as follows, with deletions made in the new subpoena in brackets and additions underlined, called for

"all evidentiary documents, books * * * and objects which are in your possession * * * and were obtained from:

"[(1)] (2) ICA or AID and which relate to the [payment of allowances for promotion or the financing of such allowances by ICA or AID or any] transactions to which reference is made in the indictment * * *."

Olin has made no attempt, in this paragraph, to narrow or particularize its demands in compliance with Judge McGohey's order. Paragraph 2 will, therefore, be quashed.

## III. Paragraph 3

Paragraph 3 of Olin's original subpoena to the United States Attorney was quashed because it "would require the production of everything that could conceivably have anything to do with the case" and for failure to limit its demands to that which would be "evidentiary and discoverable." Order, at 5. The demands of the new paragraph 3 have been narrowed and paticularized sufficiently to meet Judge McGohey's first objection.

It is quite difficult to determine exactly when the line is to be drawn, in accordance with Judge McGohey's order, as to which demands are too vague and which are not. The new demands, however, are very similar in their scope and type of subject matter to those of the enforced paragraphs of the AID subpoena, the same paragraphs now enforced by this court as paragraph 1 of this subpoena. See subparagraphs (a), (g) and (h) of the present subpoena, paragraph 1.

■■ The Government contends that these demands still request non-evidentiary documents, involving hearsay, and that merely using the word "evidentiary" in the general preamble to all paragraphs will not avoid this defect. While it is of course true that documents need only be produced under Rule 17(c) if evidentiary, United States v. Iozia, supra, 13 F.R.D. at 338, it is not always easy to particularize a demand in such a way as to negate all non-evidentiary documents. See paragraph 1 of the present subpoena. The degree of particularity required must necessarily vary with the facts of each case. See Note, 64 Colum.L.Rev. 735, 755 (1964). Here, Olin has limited its demands to documents obtained from key figures relative to key issues. Limiting such documents to those that are "evidentiary," albeit stating a conclusion, is sufficient qualification under the facts of this case.

■ If the Government wishes to withhold certain documents on the ground that they are not evidentiary, it may

raise such objections, as with privilege, at the time for production. At that time an *in camera* inspection by the court may be required to determine the validity of objections interposed.

Submit order on five days' notice, in accordance with the terms of this opinion.