**UNITED STATES of America,**
**Plaintiff,**

v.

**Nathan WOLFSON, William F. Emmons, Albert Frost, James B. Thompson and Edward Fishbein, Defendants.**

**Crim. A. No. 1909.**

United States District Court
D. Delaware.
May 13, 1969.

Alexander Greenfeld, U. S. Atty., and L. Vincent Ramunno, Sp. Asst. U. S. Atty., Wilmington, Del., for plaintiff.

Donald C. Taylor, Wilmington, Del., for defendant, Nathan Wolfson.

William D. Bailey, Jr., Wilmington, Del., for defendant, William F. Emmons.

Bruce M. Stargatt, Wilmington, Del., for defendant, Albert Frost.

William T. Lynam, III, Wilmington, Del., for defendant, James B. Thompson.

**1248**

Thomas C. Troy, Boston, Mass., for defendant, Edward Fishbein.

## OPINION

LATCHUM, District Judge.

Defendants are charged in a twenty-nine count indictment with conspiracy to violate the mail fraud statute and twenty-eight substantive violations of that statute. 18 U.S.C. §§ 371, 1341. On an earlier occasion this court ruled on various pre-trial motions of the defendants but decision was reserved on certain motions to suppress evidence until a hearing could be conducted to clarify the relevant factual issues involved. United States v. Wolfson, 294 F.Supp. 267 (D.Del.1968). The evidentiary hearing was held on January 28, 1969, supplemental briefs were filed with the court, and this opinion deals with the suppression motions.

Defendants, Wolfson, Emmons and Fishbein, have moved for the suppression and return of (1) certain documentary material obtained pursuant to a search warrant issued for Garage No. 21, located at the rear of 614 West 29th Street, Wilmington, Delaware, (2) certain other corporate records and documents obtained under a grand jury subpoena which came from a storage space at the Brandywine Summit Shopping Center, Glen Mills, Pennsylvania, and was later the subject of a search warrant, and (3) certain documents also obtained on a grand jury subpoena from the law offices of a Wilmington attorney.

At the January 28th hearing, defendant Frost orally joined in the request for the suppression of the documents subpoenaed from the shopping center, and

defendants, Wolfson, Emmons and Fishbein, withdrew their suppression motions with respect to the evidence subpoenaed from the local law office.

Some of the testimony at the hearing concerned certain additional documents and material seized by the government at the shopping center as abandoned property after the execution of the subpoena. Emmons and Fishbein have discussed this matter in their supplemental briefs and requested suppression and return of that property. This opinion therefore deals with the garage search and seizure, the shopping center subpoena, and the seizure of the allegedly abandoned property.

With regard to the search and seizure at the garage, defendants complain that, in the language of Rule 41(e), F.R.Cr.P., "there was not probable cause for believing the existence of the grounds on which the warrant was issued" and "the warrant is insufficient on its face" since it did not adequately identify the property to be seized. As to the documents obtained from the shopping center under the grand jury subpoena, defendants argue for suppression and return on the ground "the property was illegally seized without a warrant." As before noted the seizure of the allegedly abandoned property was not the subject of the suppression motions but the supplemental briefs of Emmons and Fishbein discuss this matter and request its suppression and return so it shall be treated here as subject to a motion to suppress.

In its original answering brief the government raised, only incidentally, the issue of standing,[1] i. e. that the defendants are not "person[s] aggrieved by an unlawful search and seizure" within the meaning of Rule 41(e).[2] This court

---

1. The government stated that "the documents sought to be suppressed in this case are corporate records and documents. Consequently, there is a serious question of whether the defendants have standing in this case to question the validity of the search warrants." Government's Combined Answering Brief at 36. It would appear from the breadth of this language that the government questions the stand-

ing of each of the moving defendants to attack under Rule 41(e), F.R.Cr.P., the seizure of any of the materials and documents in question at this time.

2. In order to qualify as a "person aggrieved by an unlawful search and seizure" one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one

has concluded upon a careful examination of the record before it that defendants Emmons and Fishbein have no standing to attack the search and seizure at the garage.[3] It is clear from the latest ruling of the Supreme Court on this subject that in order to have standing to assert a violation of the Fourth Amendment's search and seizure requirements and seek suppression of evidence as the fruit of an illegal search and seizure (i. e. to be a "person aggrieved") one must either (1) have a proprietary or possessory interest in the place searched or the thing seized, or (2) be legitimately present on the premises at the time the search occurs,[4] or (3) have a reasonable expectation that the area in question will be free from governmental intrusion. Mancusi v. De Forte, 392 U.S. 364, 367–368, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968). The search in this case involved a garage which was leased to the defendant Thompson who signed the lease agreement in an individual and not a representative capacity. The property which was seized, as listed in the inventory attached to the Marshal's return, appears to be a number of business documents and ledgers relating principally to insurance operations which are not further identified. The record before the court does not indicate that the moving defendants Emmons and Fishbein have or had any proprietary or possessory interest in the garage or the items seized therein, that they were legitimately present or even had the right to be present[5] in the garage at

---

who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else.

Jones v. United States, 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). One court has recently stated a preference in this regard for a presumption "that a search of an area in which the defendant has an interest is 'directed' at him, rather than premising protection of Fourth Amendment rights on retrospective analyses of subjective police intentions." Baker v. United States, 401 F. 2d 958, 983 n. 115 (D.C.Cir. 1968). In the instant case there is no apparent question that the information gathering activities in issue were directed at the moving defendants.

3. Very recently the Supreme Court affirmed the rule "that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). The Court acknowledged that "[t]he deterrent values of preventing the incrimination of those whose rights the police have violated" justify suppression of evidence, but it maintained strict adherence to the standing requirement since it was unconvinced that the additional benefits of extending the exclusionary rule to other defendants would justify further encroachment upon the public interest in prosecuting those accused of crime and having them acquitted or convicted on the basis of all the evidence which exposes the truth. *Id.* at 174, 89 S.Ct. at 967; *contra id.* at 200, 89 S.Ct. at 981 (Fortas, J. dissenting in part).

4. The Supreme Court rejected the once popular rule that standing should be controlled by the principles of private property law in favor of "recognizing that anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him." Jones v. United States, 362 U.S. 257, 267, 80 S.Ct. 725, 734, 4 L.Ed.2d 697 (1960). It appears, however, that for a person so situated to have standing he must also be the "one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else." *Id.* at 261, 80 S.Ct. at 731; Mancusi v. De Forte, 392 U.S. 364, 376, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968) (Black, J. dissenting). One circuit has held that the mere "right to be on the premises", as distinguished from actual presence at the time of search, is sufficient to establish standing to suppress. Spinelli v. United States, 382 F.2d 871, 879 (C.A. 8, 1967), rev'd on other grounds, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *accord*, Baker v. United States, 401 F.2d 958, 983 n. 108 (D.C.Cir. 1968).

5. See note 3, *supra.*

the time the search occurred, or that the garage was an area in which they were entitled to a reasonable expectation of freedom from governmental intrusion. Emmons and Fishbein have not established themselves personally as the victims of a violation of their Fourth Amendment rights, which is a prerequisite to standing to challenge the legality of a search. *See* United States v. Cowan, 396 F.2d 83, 86 (C.A. 2, 1968). The only moving defendant who appears possibly to have standing is Wolfson since he assumed reponsibility for Thompson's rent payments after the first rent payment had been made and he proceeded to make some further payments. However, since "[t]he mere payment of rent by one not a party to a lease does not without more, indicate or create an assignment of the lease," 51C C.J.S. Landlord and Tenant § 37(3), at 113 (1968), this factor alone clearly does not show a proprietary or possessory interest in Wolfson in the leasehold. There is no evidence in the record, even with this assumption of the rent obligation by Wolfson, to indicate that he acquired an interest in the premises such that he could reasonably expect the garage to be free from governmental intrusion and certainly nothing shows that he was present or had the right to be present on the premises at the time of the search. Since it appears that none of the moving defendants have demonstrated to the court's satisfaction their standing to attack the search of the garage, the motion to suppress the fruits of that search must be denied.

With respect to the motions to suppress the two boxes of documents subpoenaed from the shopping center and later subjected to a search warrant procedure, the court admits to some confusion as to the moving defendants' grounds for suppression. Before discussing the grounds for suppression, however, the standing of the movants to complain in this regard must be considered since the grand jury's subpoena duces tecum was directed only to Thompson who has not moved for sup-

pression or joined in the motions to suppress.

■ Postal Inspector Turner's affidavit in support of the subsequent application for a warrant to search the two boxes and the evidentiary hearing on the suppression motions disclosed the following relevant facts regarding the location of those boxes at the shopping center. Sometime prior to November, 1967 Thompson rented space in the shopping center which was actually only the right to store materials in a closet and to have the use of a desk and an informal telephone answering service. At the time the lease was negotiated Wolfson and Emmons were introduced by Thompson to a representative of the shopping center's management, Mrs. Eileen Burns, who apparently worked regularly at the center and who testified at the hearing. There is no clear indication, however, that anyone other than Thompson entered into the lease. Furthermore, only Thompson utilized the desk space and arranged for the telephone answering service. The general impression received from Mrs. Burns' testimony is that the space and service arranged for by Thompson constituted an office of Interstate Reporting Service. While the defendants were all allegedly involved with this company, only Thompson appears on the record to have acquired any proprietary or possessory interest in the shopping center space. The subpoena was personally complied with by Thompson, but none of the other defendants appear to have been present at the time. As to the materials which were stored in the shopping center, it appears only by the hearsay testimony and affidavit of the Postal Inspector, that the materials belonged to Wolfson and not to Thompson. This is not sufficient to establish Wolfson's standing on the ground of a proprietary or possessory interest in the materials or otherwise. There is, in fact, no clear evidence of standing for Wolfson or the other moving defendants to seek suppression.

■ Even assuming that Wolfson has standing to object to the subpoena

duces tecum and the use of the evidence produced thereunder,[6] the court believes that this defendant has waived his right to object to the subpoena on Fourth Amendment grounds by his failure or the failure of the custodian of his documents, defendant Thompson, to move to quash or modify the subpoena under Rule 17(c), F.R.Cr.P. "The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive." F.R.Cr.P. 17(c). Any objection to a subpoena duces tecum under Rule 17(c) is to be made at the time that production is sought. *See* United States v. Olin Mathieson Chem. Corp., 36 F.R.D. 18, 21–22 (S.D.N.Y.1964), aff'd. 368 F.2d 525 (C.A.2, 1966). By producing the subpoenaed materials for the grand jury, Thompson waived any objection he might have had to the subpoena and he also waived Wolfson's right to object since he was the custodian of these materials for Wolfson. *Cf.* In re Meckley, 50 F. Supp. 274, 275 (M.D.Pa.), aff'd, 137 F.2d 310 (C.A.3), cert. den. 320 U.S. 760, 64 S.Ct. 69, 88 L.Ed. 453 (1943).

Furthermore, aside from the question of waiver, the asserted ground for suppression of these documents does not entitle Wolfson to the relief he has requested. He complains that the documents were not obtained by the government pursuant to a search warrant and that, although production was accomplished through a subpoena duces tecum, the records belonged to Wolfson and were not in Thompson's custody.

█ It is clear from the uncontradicted testimony of Inspector Turner and Mrs. Burns at the evidentiary hearing that Thompson was the only person who arranged for the storage space, who maintained some degree of contact with the shopping center, and who exercised control over the boxes of materials in response to the subpoena duces tecum. On the basis of the record before the court and the assumption that the materials in question belonged to Wolfson, I conclude the only reasonable inference is that Thompson had actual physical possession of the materials in question. He was, therefore, a proper party upon whom the subpoena could have been served. *See* Schwimmer v. United States, 232 F.2d 855, 860 (C.A.8), cert. den. 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956). The grand jury's subpoena duces tecum was as legally capable of commanding the production of the materials by process against the custodian as it was by service upon the actual owner. *Id.* The boxes of materials were legally taken from the shopping center pursuant to a grand jury subpoena served upon and obeyed by Thompson. The motion to suppress this evidence will be denied.

█ Finally, with regard to the three boxes of material seized by Inspector Turner at the shopping center without legal process, the government contends that no illegality has tainted this seizure since the property had been abandoned. Abel v. United States, 362 U.S. 217, 241, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); Hester v. United States, 265 U.S. 57, 58, 44 S.Ct. 445, 68 L.Ed. 898 (1924). Only two of the moving defendants, Emmons and Fishbein, have discussed this matter in their briefs and made application, albeit informally, for the suppression and return of this property. It has already been decided that neither of these two individuals has established himself to have standing to allege an unconstitutional invasion of his right of privacy with regard to the

---

6. If Wolfson is the owner of the materials in question then he alone of the moving defendants would have standing to seek suppression of the evidence. Jeffers v. United States, 88 U.S.App.D.C. 58, 187 F.2d 498, 500–501 (1950), aff'd, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951). Furthermore, his commission of the materials to Thompson's custody for storage in the shopping center would entitle him to the reasonable expectation of freedom from unconstitutional governmental intrusion into that area, thus also qualifying him for standing to seek suppression. Mancusi v. De Forte, 392 U.S. 364, 368, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968).

facilities at the shopping center. *Supra* at 1250. Wolfson and Thompson, the only two defendants who might possibly have standing in the present state of the record, have not moved for relief under Rule 41(e) with regard to the seizure of the allegedly abandoned property. Therefore, the motions to suppress and return the property seized by Inspector Turner at the shopping center on February 15, 1968 must be denied since the movants have not demonstrated their qualifications for relief under Rule 41(e).

An order will be entered in accordance with this opinion.