In re SPECIAL NOVEMBER 1975 GRAND JURY (SUBPOENA DUCES TECUM ISSUED TO PEAT, MARWICK, MITCHELL AND COMPANY).

No. 76 GJ 1301.

United States District Court,
N. D. Illinois, E. D.

July 8, 1977.

 

James P. Chapman, George J. Cotsirilos, J. Rock Johnson, Chicago, Ill., for movants.

Steven P. Handler, Asst. U. S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

PARSONS, Chief Judge.

Movants, Arrow Oil Corporation, Texoil Exploration, F. Gaylord Nance and Richard T. Fogle, come before me seeking to quash a grand jury subpoena duces tecum served upon the accounting firm of Peat-Marwick, Mitchell and Company. This subpoena seeks production of records presented to Peat-Marwick to enable the firm to prepare Audit Reports for Meyer, Brown and Platt, attorneys for the Continental Illinois National Bank and Trust Company of Chicago. These Reports apparently concern transactions concluded by Messrs. Nance and Fogle while they were Trust officers for the Continental Bank. Movants contend that the records were part of settlement negotiations between Nance, Fogle, and the Continental Bank, presented to Peat-Marwick with the understanding that they would not later be disclosed to any third party.

### ISSUES

The issues here are two: (1) whether there is a Fifth Amendment privilege in the subpoenaed documents and (2) whether Federal Rule of Evidence 408 is applicable (by analogy) to the Grand Jury proceeding and provides a basis for granting movant's petition to quash the Grand Jury subpoena. The latter issue seems to be one of first impression.

A better understanding of how this case comes before me is possible when a brief statement of the factual background is set forth. In May of 1976 Nance and Fogle met with Continental Bank officials, at which time they were told that alleged improprieties in transactions handled by Nance and Fogle as trust officers were being investigated. Continental Bank in-

formed Nance and Fogle that the law firm of Meyer, Brown and Platt and the accounting firm of Peat-Marwick would be conducting an internal investigation and were to prepare a Report of any irregularities discovered in these transactions.

Nance, an attorney, and Fogle produced "personal" papers and records for inspection by Peat-Marwick in July, 1976, apparently with the understanding that they would be treated in the same fashion as the Bank's corporate records or those of Arrow Oil or Texoil Exploration. There is some dispute between the parties as to the exact nature of the agreement between Peat-Marwick, on the one hand, and Nance and Fogle on the other, relating to disclosure of corporate or personal records to either Continental Bank or to Federal authorities.

In any case, on February 2, 1977 the Bank transmitted to the United States Attorney and the FBI some 38 Auditor's Reports, prepared by Peat-Marwick, Mitchell and Company, dealing with Nance and Fogle's Trust transactions. Federal investigators determined that there may have been violations of federal criminal law: thus, the Special November 1975 Grand Jury thereupon subpoenaed working papers and records then in custody of Peat-Marwick, which the Accounting firm had allegedly used as a partial basis for the aforementioned 38 Auditors Reports.

Nance and Fogle, et al., as third parties, now seek to quash the subpoena duces tecum directed to the custodian of the records, Peat-Marwick, Mitchell and Company.

### I. Fifth Amendment

The Fifth Amendment claim can be dealt with summarily. The Government has erected a proverbial straw house relating to Fifth Amendment rights; movants have never raised any Fifth Amendment claims relating to production of records in the hands of Peat-Marwick, a third party.

■ There is no currently recognized Fifth Amendment privilege as to corporate records. *United States v. Habig*, 474 F.2d 57, 61 (7th Cir. 1973). The Fifth Amendment privilege against compulsory self-incrimination is personal and may not be asserted on behalf of some other person or entity. *Couch v. United States*, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973); *Rogers v. United States*, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951).

■ Where a Grand Jury is seeking production of documents, only the person in actual possession of same may assert a personal privilege not to disclose through a motion to quash or to modify a subpoena. But an owner of a document may not assert such a privilege in order to prevent disclosure by another person who is then in possession of the documents in question. *Couch v. United States, supra,* 409 U.S. at 333, 93 S.Ct. 611. Cf., *Schwimmer v. United States*, 232 F.2d 855 (8th Cir. 1956), cert. denied, 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1970).

### II. F.R.E. 408 & 1101(d)(2)

The potential application of Federal Rule of Evidence 408[1] has been hotly disputed by the parties. Nevertheless Federal Rule of Evidence 1101(d)(2) provides that the Rules (other than with respect to privileges) "do not apply * * * to proceedings before grand juries."

The Government contends that Rule 1102(d)(2) is dispositive of the motion at bar. Movants, on the other hand, argue

---

**1.** Rule 408. *Compromise and Offers to Compromise*:

"Evidence of (1) furnishing or offering or promising to furnish or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for invalidity of the claim or its amount. Evidence of conduct or statements made in com-

promise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromised negotiations. This Rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."

that despite Rule 1101(d)(2), in the interest of Justice and to insure the right to a fair trial, the protection of Rule 408 should be extended to the present situation. Movants further contend that Congress in enacting FRE 408 (to encourage compromise and dispute settlements, to relieve court congestion, and to reduce expenditures) should, by analogy, also be applicable here. But such an extension is specious.

The Government has countered with evidence that Sub-Committee on the Judiciary had expressed concern that,

> "the parties should not be able to immunize from admissibility documents otherwise discoverable merely by offering them in a compromise negotiation." 93rd Congress, 2nd Session, 93–1277, October 18, 1974, p. 10, U.S.Code Cong. & Admin. News 1974, p. 7057.

Of course, since the Federal Rules of Evidence only apply in trial proceedings and not to Grand Jury investigations, the legislative history of Rule 408 does not apply in the first instance, particularly given the clear language of Rule 1101(d)(2).

Movant's assertion that the motion to quash should be granted "as a matter of the administration of justice" is, on balance, outweighed by countervailing public policy considerations, which give grand juries wide investigatory powers. Yet such power is not entirely unfettered.

> "Federal courts have inherent powers over their process to prevent abuse, oppression and injustice and the process of the court comprehends proceedings before the Grand Jury and the means whereby witnesses are compelled to attend such proceedings." *United States v. Johns-Manville Corporation,* 213 F.Supp. 65, 72 (E.D.Pa.1962).

*U. S. v. Calandra,* 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974), observed:

> "Traditionally, the Grand Jury has been accorded wide latitude to inquire into violations of criminal law. No judge presides to monitor its proceedings. It deliberates in secret and may determine alone the course of its inquiry. The Grand Jury may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by technical procedural and evidentiary rules governing the conduct of criminal trials."

Insuring tight secrecy in a Grand Jury proceeding should normally be sufficient to eliminate any feeling that compromise or settlement negotiations may break down merely because the parties harbor fears that their dealings might later be detrimentally disclosed to the grand jurors. Such secrecy serves a similar prophylactic function to the provision of FRE 408 which precludes introduction of such negotiations at trial. Cf., F.R.Crim.P. 6(e).

It is one of my functions as Chief Judge to protect both a witness' basic constitutional rights while testifying and to insure the secrecy of the Grand Jury proceedings; therefore, it is my belief that the overriding consideration here is society's need to uncover matters which may relate to potential criminal acts. The Grand Jury simply cannot afford to be hamstrung in its essential functions by overly fine distinctions as those attempted by the movants here.[2]

A subpoena duces tecum must be relevant to the Grand Jury's inquiry and not excessive, *In re Grand Jury Proceedings (Universal Manufacturing Co.)* 508 F.2d 684 (8th Cir. 1975). The requirement of relevance is satisfied by showing a relationship between the documents to be produced and the purpose of the investigation. *Application of Certain Chinese Family Benevolent and District Associations,* 19 F.R.D. 97 (N.D.Ca.1956); cf., *U. S. v. U. S. District*

2. Movants urge me under FRE 408 to distinguish between production of "pre-existing" documents (i. e., those created before negotiations commenced) and those which were drafted "as a result of" settlement discussions. They argue that under *U. S. v. Reserve Mining*

*Company,* 412 F.Supp. 705, 711, 712 (D.C. Minn.1976) only the former must be produced at trial. Such a characterization is hazardous at best and unduly technical, particularly if an analogy to Grand Jury proceedings is attempted as here.

*Court,* 238 F.2d 713 (4th Cir. 1956). The test of relevance is whether the documents or records sought might have some conceivable relation to a legitimate object of Grand Jury investigation. I. e., has a "sufficient nexus," in the broad context of a Grand Jury inquiry, been adequately demonstrated by the government? *See In re Morgan,* 377 F.Supp. 281 (S.D.N.Y.1974).

There is no requirement that a witness know the purpose of the investigation; trial standards of relevance simply do not apply. *In re Grand Jury Subpoena Duces Tecum,* 342 F.Supp. 709 (D.Md.1972). Furthermore, mere allegations of "irreparable harm" or injury are insufficient, *In re Morgan, supra,* without a finding that there either is a privilege or that the subpoena is overly broad or unduly oppressive. *In re United Shoe Machinery Company,* 73 F.Supp. 207 (D.Mass.1947); *Application of Harry Alexander, Inc.,* 8 F.R.D. 559 (S.N.Y. 1949). No sufficient showing of lack of relevance or of undue harm has been demonstrated here. *Cf., U. S. v. Proctor & Gamble Company,* 19 F.R.D. 122, (D.N.J. 1956).

In summary, the overriding public policy in favor of vesting broad investigatory powers with the Grand Jury; the explicit language of Federal Rule of Evidence 1101(d)(2) precluding any extension of Rule 408 to Grand Jury proceedings; the lack of an adequate showing of irreparable injury; and the protection afforded by the secrecy of Grand Jury deliberations; taken together, mandate denial of the present motion to quash the subpoena duces tecum.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Motion to Quash, filed by Richard T. Fogle and F. Gaylord Nance and by Texoil Exploration Company and the Arrow Oil Corporation, be denied. The custodian of records of Peat-Marwick, Mitchell and Company is ordered to comply forthwith with the subpoena duces tecum by producing all requested records, working papers, etc., for the Special November 1975 Grand Jury.