**In re GRAND JURY INVESTIGATION.**
**Petition for Return of Documents and**
**Motion to Quash Subpoena.**

**Misc. No. 78–510.**

United States District Court,
E. D. Pennsylvania.

Nov. 7, 1978.

Jeffrey M. Miller, Philadelphia, Pa., for petitioner.

Stanley M. Weinberg, Asst. U. S. Atty., Philadelphia, Pa., for Government.

## OPINION

LUONGO, District Judge.

The petitioner, a corporation whose records have been subpoenaed by the grand jury, requests the aid of this court with

respect to two subpoenas duces tecum.[1] Having already complied with the first subpoena, the petitioner seeks an order to compel the government to return the documents submitted to date or to bear the costs of reproducing those documents. In addition, the petitioner moves to quash a second subpoena.

On March 16, 1978, the grand jury issued to the president of the corporate petitioner a subpoena duces tecum commanding the production of 33 different categories of documents relating to the activities of 8 different corporations and spanning a period of 7 years.[2] The appearance date was April 5, 1978. Because the subpoenaed material comprised approximately 100,000 pounds of paper contained in 22 separate file cabinets, petitioner and the government reached an agreement that substantially reduced the scope of the subpoena. Moreover, as the petitioner indicated a need for the 1977 records to conduct current business, the government agreed to defer the date of full compliance. Petitioner delivered a significant portion of the documents to the grand jury on April 5, 1978, and although there is a discrepancy in the record with regard to the exact date, it appears that petitioner complied with the subpoena and agreements thereunder by May 31, 1978.

Subsequent to delivery of the documents to the grand jury, petitioner apparently realized that it was unable to conduct its day-to-day business without the 1976 and 1977 records. Petitioner informed the government on June 22, 1978, that it needed the records by June 30, 1978. In a letter dated June 27, 1978, petitioner revised its target date and advised the government that it required its records by July 6, 1978. After failing in its attempt to negotiate with the government a mutually satisfactory alternative to return of the records, petitioner initiated this action. I held a conference with petitioner and the government in my chambers on July 11, 1978, at which time I ordered the government either to return the documents or to supply the petitioner with copies. I reserved the question of responsibility for costs.

On August 22, 1978, the grand jury again issued to the president of the petitioner corporation a subpoena commanding the production of additional records from petitioner and its related companies. The August subpoena divided the requested documents into eight general categories, each of which covered a period of several years.[3] Prior to the designated return date of September 6, 1978, petitioner moved to quash the subpoena. After carefully weighing the competing considerations, I am persuaded that the balance must be struck in favor of the government and that both of petitioner's motions must be denied.

I. *The Motion to Compel The Government to Pay Costs*

A. *The Court's Power Under Criminal Rule 17(c)*

Before reaching the merits of petitioner's motion to compel the government to bear the expense of reproducing records that are currently in its possession, I must decide whether this court has the power to grant the relief requested. Citing cases that derive from proceedings to enforce IRS summonses upon innocent third parties, peti-

---

1. The papers in this proceeding have been sealed and specific references to the petitioner have been omitted from this opinion. *See generally* Local R.Crim.P. 4(c).

2. The copy of the subpoena appended to the Petition for Return of Grand Jury Documents lists 7 corporations, omitting the name of the corporate petitioner. The copy of that same subpoena appended to the government's memo in Opposition to Motion to Quash lists 8 corporations, with petitioner's name penciled in as the eighth company. All of the papers filed by both the government and the petitioner treat the subpoena as encompassing 8 corporations, including petitioner.

3. The inclusive years for one category of records are not specified; a second category spans a period of nearly six years; and the remaining requests cover a five-year period.

tioner urges that the order is neither novel nor beyond the power of the court. An examination of those cases, however, reveals that petitioner's reliance is misplaced.

Because petitioner does not seriously advance a claim under either the fourth or the fifth amendment, *United States v. Dauphin Deposit Trust Co.*, 385 F.2d 129 (3d Cir. 1967), *cert. denied*, 390 U.S. 921, 88 S.Ct. 854, 19 L.Ed.2d 921 (1968), is inapposite. *Compare id.* at 130 (fourth and fifth amendments might protect recipient of IRS summons from unreasonable and excessive burden) *with United States v. Friedman*, 532 F.2d 928, 934–35 (3d Cir. 1976) (discussion of fourth and fifth amendment challenges to IRS summons and subpoena duces tecum). The other authorities upon which petitioner relies are equally unavailing. *United States v. First National Bank of Fort Smith*, 173 F.Supp. 716 (W.D.Ark.1959), involved a challenge to an administrative summons issued to a bank, which was an innocent third party, in the course of a taxpayer investigation. The court held that full compliance at an expense to the bank of nearly $30,000 was unreasonable in light of the availability and practicability of less expensive alternatives. *Id.* at 720–21.

In *United States v. Farmers & Merchants Bank*, 397 F.Supp. 418, 420–21 (C.D.Cal. 1975), the case most helpful to petitioner, the court held that the duty to provide evidence did not entail incurring an expense of $2500 to aid the government's investigation of a third party. Yet, petitioner's analogy to this case fails in two crucial respects. First, petitioner is not a complete stranger to this investigation. The precise relationship of the petitioner to the target of the investigation is not expressly delineated in any of the papers filed in connection with this first motion. The government's affidavit submitted with its memorandum in opposition to the motion to quash the August subpoena, however, identifies the petitioner, its affiliated companies, officers, and employees as the focus of the grand jury's inquiry. Petitioner is therefore in a much less favorable position than was the Farmers & Merchants Bank, and the persuasive impact of that case is thereby reduced. Even the Tax Reform Act of 1976, which codified the courts' solicitude for innocent third parties, precludes reimbursement if "the person with respect to whose liability the summons is issued has a proprietary interest in the [material] required to be produced . . . ." Pub.L.No.94–455, § 1205(a), 90 Stat. 1702 (1976) (codified at 26 U.S.C. § 7610 (1976)).

The second, and more compelling, point of divergence between *United States v. Farmers & Merchants Bank* and the matter before me is the fact that this case involves a grand jury subpoena. Although the Third Circuit Court of Appeals has recently held that the district court may, in an appropriate case, condition enforcement of an IRS summons upon the government's payment of the reasonable cost of compliance, *see United States v. Friedman, supra*, 532 F.2d at 937–38,[4] no court in this circuit has yet addressed the precise question presented by this case: shifting the cost of compliance with a grand jury subpoena. Mindful of the distinction between a grand jury subpoena and an IRS administrative summons, recently underscored by the Third Circuit in *United States v. Genser*, 582 F.2d 292, 306 (3d Cir. 1978), I hesitate to transpose the rationale of the IRS summons enforcement proceedings to the grand jury context. *Cf. In re Grand Jury Subpoena Duces Tecum Issued to the First National Bank of Maryland Dated November 4, 1976*, 436 F.Supp. 46, 49–51 (D.Md.1977) (bank's status as innocent record-keeper neither entitles it to

---

4. In this case, decided prior to the effective date of the Tax Reform Act of 1976, the court emphasized that not all third party record-keepers would be entitled to reimbursement. Instead, individualized consideration would be required to determine both the extent to which the subpoenaed party had dealt with the taxpayer under investigation and the difference between the cost of compliance and that which the subpoenaed party might reasonably be expected to bear as a cost of doing business.

reimbursement nor requires court to quash grand jury subpoena where cost of compliance is comparatively minimal).

If I am to agree with petitioner that an order compelling the government to bear the cost of petitioner's compliance with this grand jury subpoena is within the discretion of the court, I must look elsewhere for guidance. A few courts, including the Fifth Circuit Court of Appeals, have held that a court modifying a subpoena pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure may impose the costs of compliance upon the government. *See In re Grand Jury No. 76–3 (MIA) Subpoena Duces Tecum*, 555 F.2d 1306, 1308 (5th Cir. 1977); *In re Grand Jury Subpoena Duces Tecum Issued to Southern Motor Carriers Rate Conference, Inc., Dated August 13, 1975*, 405 F.Supp. 1192, 1197–1200 (N.D.Ga. 1975); *cf. In re Grand Jury Subpoena Duces Tecum Issued to the First National Bank of Maryland Dated November 4, 1976, supra*, 436 F.Supp. at 50–51.

■ Rule 17(c) provides that a court "may quash or modify the subpoena if compliance would be unreasonable or oppressive." Although Rule 17(c) does not specifically empower the court to order the government to bear the cost of compliance, the Advisory Committee Note to Subdivision (c) suggests that the criminal rule is substantially the same as Rule 45(b) of the Federal Rules of Civil Procedure. Civil Rule 45(b) provides that the court "may (1) quash or modify the subpoena if it is unreasonable and oppressive or (2) condition denial of the motion upon the advancement by the person in whose behalf the subpoena is issued of the reasonable cost of producing the books, papers, documents, or tangible things." Given the broad powers traditionally accorded the grand jury in its criminal investigatory role,[5] I believe that it is more reasonable for a court faced with the option of quashing a subpoena, and thereby foreclosing an otherwise valid grand jury investigation, or shifting the cost of compliance

to the government to choose the latter alternative. I therefore agree with those courts which have held that a district court confronted with a challenge to a grand jury subpoena under Rule 17(c) may compel the government to bear the cost of compliance.

### B. *The Merits of Petitioner's Motion*

Petitioner avers that it made a good faith request based upon a legitimate business need for the records in question. It argues that the continued retention by the government is unreasonable and has prejudiced the petitioner's business interests. Appealing to the court's sense of fair play, petitioner takes the position that having fully cooperated with the government by negotiating a modification of rather than contesting the subpoena, it is now entitled to return of the records, or in the alternative, to copies at the government's expense. The government, on the other hand, subtly intimates that petitioner's failure to contest the subpoena at the outset or to raise the possibility, either during the negotiations about the scope of the subpoena or prior to compliance, that deprivation of the records would prejudice its business should preclude petitioner from now advancing that complaint.

■ Rule 17(c) provides for modification of a subpoena duces tecum on "motion made promptly" and Civil Rule 45(b) permits modification "at or before the time specified in the subpoena for compliance . . . ." Although there is some support in the case law for the proposition that a recipient of a subpoena duces tecum who fails to object prior to compliance waives any objection that he might have had, *see United States v. Kleen Laundry & Cleaners, Inc.*, 381 F.Supp. 519, 523 (E.D.N.Y.1974); *United States v. Wolfson*, 299 F.Supp. 1246, 1250–51 (D.Del.1969), the objections to the subpoena in those cases were raised after the indictments had been returned. In this case, however, petitioner realized shortly after compliance that its business would be

---

5. In discussing the institution of the grand jury, the Supreme Court has recognized the wide latitude afforded the grand jury in discharging its responsibility to vindicate the public interest. *United States v. Calandra*, 414 U.S. 338, 342–46, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).

seriously prejudiced if it were forced to continue operation without access to its records.

I am not inclined to adopt a rule on the authority of *Wolfson* and *Kleen Laundry* that would prevent a party, faced with such a prospect as that alleged by petitioner, from seeking the aid of this court. Where a party, confronted with the specter of severe, adverse business repercussions as a consequence of compliance, promptly invokes the aid of the court, the court may act to relieve the unreasonable or oppressive effects of compliance. Any other course would be tantamount to penalizing a party for choosing to cooperate with, rather than resist, the grand jury process.

■ Just as a party should not be penalized for its cooperation, however, neither should it be rewarded for performing what is, in effect, a public duty owed by all citizens to the government. *See Hurtado v. United States*, 410 U.S. 578, 588–89 & n. 10, 93 S.Ct. 1157, 35 L.Ed.2d 508 (1973); *In re Grand Jury No. 76–3 (MIA) Subpoena Duces Tecum, supra*, 555 F.2d at 1308–09; *United States v. Friedman, supra*, 532 F.2d at 935; *United States v. Dauphin Trust Co., supra*, 385 F.2d at 130. A party commanded to appear before the grand jury should not expect reimbursement for the expense of testifying. *In re Grand Jury No. 76–3 (MIA) Subpoena Duces Tecum, supra*, 555 F.2d at 1309. The Supreme Court has consistently adhered to the principle first enunciated in *Blair v. United States*, 250 U.S. 273, 281, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919), that "[t]he personal sacrifice involved [in providing evidence] is a part of the necessary contribution of the individual to the welfare of the public." *See, e. g., Hurtado v. United States, supra*, 410 U.S. at 589, 93 S.Ct. at 1164 ("public obligation . . . persists no matter how financially

burdensome"); *United States v. Dionisio*, 410 U.S. 1, 9–10, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973) (historically rooted obligation to appear and give evidence may be onerous but it is nevertheless necessary to the ends of justice).

Proceeding from this well-established premise that the subpoenaed party must bear the expense of compliance, courts have exercised the power to quash or modify (or condition enforcement on the advancement of costs) only where there has been a clear showing of unreasonableness or oppressiveness. *See, e. g., In re Morgan*, 377 F.Supp. 281, 284–85 (S.D.N.Y.1974); *In re Corrado Brothers, Inc.*, 367 F.Supp. 1126, 1132–33 (D.Del.1973). Such a showing is absent here. Petitioner alleges a good faith need for the records in question, yet it acknowledges that this subpoena with which it has already complied is not oppressive. It asserts that the unreasonableness stems from the government's continued retention of the documents.

■ I cannot agree with petitioner's assertion that the government's retention of the documents for approximately six months is unreasonable.[6] Even assuming a prejudicial retention, however, plaintiff cannot prevail. A determination to shift to the government the cost of compliance with an otherwise reasonable subpoena necessarily involves consideration of the financial capability of the subpoenaed party. Petitioner has admitted that it is a multi-million-dollar corporation; it refuses to pay the copying costs "on principle." However initially appealing, petitioner's stance lacks a legal foundation. *Hurtado* reiterates the general rule that the witness bear the cost of providing evidence "no matter how financially burdensome." 410 U.S. at 589, 93 S.Ct. 1157; *see In re Morgan, supra*, 377 F.Supp. at 284–85 (scales tip in favor of

---

**6.** The government had possession of the 1977 records for approximately one month and possession of the 1976 records for slightly longer than two months when petitioner first requested that the documents be returned. Petitioner certainly should have anticipated that sifting through documents "so voluminous in nature that they were delivered . . . in the rear

of a station wagon" would require an extended period of time. *See United States v. Kleen Laundry & Cleaners, Inc.*, 381 F.Supp. 519, 520–21 (E.D.N.Y.1974) (court refused to overturn indictment where documents that had been voluntarily delivered were held by United States attorney and FBI for 18 months before being turned over to grand jury).

grand jury unless subpoena overbroad or witness has privilege). As I have already noted, some courts have indicated a willingness to shift the cost to the government, but only in extreme cases. *See In re Grand Jury No. 76–3 (MIA) Subpoena Duces Tecum, supra*, 555 F.2d at 1308–09 (court may consider consequences of copying costs only after it has determined that production of original documents is practical impossibility); *In re Grand Jury Subpoena Duces Tecum Issued to the First National Bank of Maryland Dated November 4, 1976, supra*, 436 F.Supp. at 47, 51 (cost of retrieving and reproducing subpoenaed records insignificant when compared to petitioner's net worth); *In re Grand Jury Subpoena Duces Tecum Issued to Southern Motor Carriers Rate Conference, Inc., Dated August 13, 1975, supra*, 405 F.Supp. at 1198 (production of documents would not only totally disrupt petitioner's business but also cost petitioner, a nonprofit corporation, between $908,811 and $1,759,015 to assemble and reproduce subpoenaed records).

■ Petitioner's plight is far from extreme. The total cost of reproducing the documents here in issue was $2,199.80. Compared to the worth of the corporation, the cost of complying with this subpoena— that is, the cost of copying the documents in order to forestall any disruption in its business routine while the records remain in the grand jury's possession—is not significant. Compliance with a grand jury subpoena is a public duty, the performance of which is suspended only upon a clear showing of oppression or unreasonableness. Petitioner has not sustained its burden and must bear the cost of reproducing the documents that it has requested the government to return.

## II. *The Motion to Quash*

Adverting to the numbers of documents requested by the successive subpoenas and to the time spent by company personnel in gathering the subpoenaed material, petitioner moves to quash the August subpoena. In its motion, petitioner recatalogues its efforts to cooperate with the grand jury but asserts that the cumulative impact of the subpoenas "constitutes harrassment [*sic*]." The petitioner complains that it has been under investigation for three years, which has caused the corporation and its officers to suffer "undue inconvenience, expense, and humiliation." Asserting that the comptroller is the only individual capable of testifying knowledgeably with respect to the subpoenaed records, the petitioner also argues that the comptroller's absence from the home office substantially disrupts the internal workings of the company. Finally, petitioner contends that the sheer bulk of the documents demanded and the "inordinate period of time" covered render the subpoena oppressive, overbroad, and unreasonable.

■ I have previously alluded to the necessity for a clear showing of unreasonableness or oppressiveness before a court will act to quash a grand jury subpoena. In ascertaining whether the prerequisites of Criminal Rule 17(c) have been satisfied, the court's inquiry focuses upon three factors: (1) whether the subpoena commands the production of documents relevant to the grand jury investigation; (2) whether the demand for the documents is made with reasonable particularity; and (3) whether the request spans a reasonable period of time. *United States v. Gurule*, 437 F.2d 239, 241 (10th Cir. 1970), *cert. denied*, 403 U.S. 904, 91 S.Ct. 2022, 29 L.Ed.2d 679 (1971), *quoted in In re Grand Jury Investigation, (Local 542—International Union of Operating Engineers)*, 381 F.Supp. 1295, 1298 (E.D.Pa.1974), *and In re Corrado Brothers, supra*, 367 F.Supp. at 1129.

■ Inasmuch as the party resisting the grand jury's process bears the burden of showing that the subpoena is oppressive or abusive, *see In re Grand Jury Proceedings (Schofield II)*, 507 F.2d 963, 965 (3d Cir.), *cert. denied*, 421 U.S. 1015, 94 S.Ct. 2424, 44 L.Ed.2d 685 (1975), the secrecy of the grand jury's proceedings substantially impedes a witness' attempt to show that the documents demanded are not relevant to the investigation. Cognizant of this obstacle, the Third Circuit Court of Appeals requires the government to make a minimal showing

by affidavit of the existence of a proper purpose before the court may order that the subpoena be enforced. *In re Grand Jury Proceedings,* 579 F.2d 836, 838 (3d Cir. 1978). The affidavit must show "(1) the grand jury's jurisdiction, (2) relevancy of the subpoenaed materials to an investigation within that jurisdiction, and (3) the absence of an unrelated purpose." *In re Grand Jury Impaneled January 21, 1975 (Freedman),* 529 F.2d 543, 548 (3d Cir.) (citing *In re Grand Jury Proceedings (Schofield I),* 486 F.2d 85, 93 (3d Cir. 1973)), *cert. denied,* 425 U.S. 992, 96 S.Ct. 2203, 48 L.Ed.2d 816 (1976).

The government's affidavit, accompanying its opposition to the motion to quash, contains the attestation that "[t]he materials, documents and related information described in the subpoena duces tecum are sought for no purpose unrelated to the scope of the pending grand jury investigation." The affiant also states that the grand jury is investigating allegations that the petitioner, its affiliated companies, officers, and employees have bribed employees of the federal government, have made illegal payments or concessions to employees of companies with which it does business, have misapplied, diverted, and embezzled corporate funds, and have employed the instrumentalities of interstate commerce to accomplish these illegal ends. To aid this investigation, the subpoena commands the production of documents and records that evidence or explain payments made to particular individuals and companies. The grand jury also demands records of travel and entertainment expenses, documents relating to the purchase or lease of vehicles, records of transactions through certain bank accounts, and addresses of individuals listed in a specific payroll register.

■ As the courts have repeatedly emphasized, relevancy in the context of a grand jury investigation is not a probative relevancy but rather is measured by a less exacting standard. *Schwimmer v. United States,* 232 F.2d 855, 862–63 (8th Cir.), *cert. denied,* 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956); *see, e. g., In re September 1975 Grand Jury Term,* 532 F.2d 734, 738 (10th Cir. 1976); *Bursey v. United States,* 466 F.2d 1059, 1076 (9th Cir. 1972); *In re Grand Jury Subpoenas Duces Tecum Addressed to Certain Executive Officers of M. G. Allen & Associates, Inc.,* 391 F.Supp. 991, 997–98 (D.R.I.1975); *In re Grand Jury Investigation (Local 542), supra,* 381 F.Supp. at 1299; *In re Morgan, supra,* 377 F.Supp. at 285; *In re Grand Jury Subpoena Duces Tecum,* 342 F.Supp. 709, 712–13 (D.Md.1972). The relevancy requirement is satisfied as long as there is a logical connection between the subpoenaed documents and the charges that constitute the focus of the grand jury's probe. *E. g., In re Faltico,* 561 F.2d 109, 111 (8th Cir. 1977); *In re September 1975 Grand Jury Term, supra,* 532 F.2d at 738; *United States v. Reno,* 522 F.2d 572, 576 (10th Cir. 1975); *In re Special November 1975 Grand Jury (Subpoena Duces Tecum Issued to Peat, Marwick, Mitchell and Co.),* 433 F.Supp. 1094, 1097–98 (N.D.Ill.1977); *cf. In re Grand Jury Impaneled January 21, 1975 (Freedman), supra,* 529 F.2d at 548–49.

■ Viewed in light of the subject of this investigation, the documents outlined in the subpoena here challenged are clearly relevant to the grand jury's inquiry. As the Third Circuit Court of Appeals so aptly stated:

"[T]here is an obvious likelihood that any 'bribe taking or embezzlement' will have been disguised as a legitimate transaction, perhaps 'laundered' through an entity which on the surface may appear [innocent] . . . ."

*In re Grand Jury Proceedings, supra,* 579 F.2d at 839.

The records sought by this subpoena will undoubtedly aid the grand jury's attempt to determine whether the transactions in question do conceal illegal activity, and if so, who has violated the law. *See id.; In re Horowitz,* 482 F.2d 72, 79 (2d Cir.), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973).

■ With respect to particularity, the second component of reasonableness, the subpoena speaks for itself. The petitioner apparently does not—and could not success-

fully—contend that the subpoena is obscure or ambiguous. Each category clearly describes the material to be produced, and this specificity enables the petitioner to readily identify the documents required by the grand jury.

 The third factor against which the courts gauge reasonableness is the period of time covered by the demand. Petitioner urges that the years over which this subpoena extends render it unreasonable. I do not agree. Here, as with the concept of relevancy, reasonableness depends upon the subject matter of the investigation.[7] The grand jury is probing into an alleged pattern of illegal payments and embezzlement of corporate funds. Again, the direction of the Third Circuit Court of Appeals is pertinent:

> "Where corporate entities and their officers are suspected of involvement with illegal bribes a broad examination of such corporations' records may indeed be necessary inasmuch as a '[a] grand jury's investigation is not fully carried out until every reliable clue has been run down and all witnesses examined in every proper way to find if a crime has been committed . . . [.]' "
>
> *In re Grand Jury Proceedings, supra,* 579 F.2d at 839 (quoting *United States v. Dionisio,* 410 U.S. 1, 13, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973)).

In addition, the five to six year periods covered by this subpoena approximate the federal statute of limitations. *See generally* 18 U.S.C. § 3282 (1976) (unless otherwise provided, statute of limitations for noncapital offenses is five years). I cannot say that the documentation requested in this instance is excessive relative to the scope of the investigation, and I find that the time period designated by the subpoena is reasonable.

 The foregoing analysis also answers petitioner's charge that the subpoena is overbroad. Because the concept of over-breadth is antithetical to those of relevancy, particularity, and reasonableness of time, a finding that a subpoena comports with the latter requirements necessarily disproves the contention that the subpoena is overbroad. Indeed, the juxtaposition of ostensibly contradictory sentiments in *Hale v. Henkel,* 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906), startlingly illustrates the incompatibility of these terms. The Supreme Court sympathized with the petitioner in that seminal case, stating that "it is difficult to say how its business could be carried on after it had been denuded of this mass of materials." *Id.* at 77, 26 S.Ct. at 380. Immediately thereafter, however, the Court opined that "many, if not all, of these documents may ultimately be required . . . [if] some evidence of [their] materiality [is] produced." *Id.; cf. In re Berry,* 521 F.2d 179, 182 (10th Cir.), *cert. denied,* 423 U.S. 928, 96 S.Ct. 276, 46 L.Ed.2d 256 (1975). I have already determined that the records requested by this subpoena are relevant and described with reasonable particularity, and that the years for which documentation is requested are reasonable in light of the nature of the investigation. I therefore find petitioner's overbreadth argument to be without merit.

 Equally lacking in merit is petitioner's contention that compliance with this subpoena would be oppressive. Petitioner avers that a federal grand jury sitting in Baltimore has subpoenaed a number of the same records that have been requested by the grand jury in this district. This factor, in and of itself, however, will not preclude enforcement of a grand jury subpoena. Although simultaneous or successive subpoenas may be inconvenient and even burdensome, each grand jury has a legitimate interest in investigating substantive offenses occurring within its jurisdiction. *In re Archuleta,* 432 F.Supp. 583, 596–97 (S.D.N.Y.1977). Each grand jury may also require the production of fresh,

---

7. In the context of grand jury investigations of antitrust violations, for example, courts have enforced subpoenas covering periods of more than ten years. *See generally In re Grand Jury Subpoena Duces Tecum Addressed to Provision Salesmen and Distrib. Local 627,* 203 F.Supp. 575, 578–79 (S.D.N.Y.1961) (collecting cases).

relevant evidence that has not yet been produced for its inspection. *In re Grand Jury Subpoena Duces Tecum Issued to Southern Motor Carriers Rate Conference, Inc., Dated August 13, 1975, supra,* 405 F.Supp. at 1198; *In re Grand Jury Subpoena Duces Tecum Addressed to Provision Salesmen and Distributors Local 627,* 203 F.Supp. 575, 582–83 (S.D.N.Y.1961). The petitioner complains about repetitive subpoenas, but it does not expressly object to any particular category of documents in the August subpoena on the grounds that this grand jury is already in possession of the material requested. Indeed, it appears that each subpoena demanded the production of records not previously received by the grand jury and that this subpoena is not duplicative.

■■■■ Petitioner suggests that compliance with this subpoena would be "unfair" because it would require a fourth appearance by its comptroller and that his absences from the home office cause a "substantial disruptive effect on the internal workings of the company." Several considerations prompt my rejection of this contention. First, even if I were to credit petitioner's allegation of prejudice to its business, I cannot say that it rises to the level of oppressiveness that would induce me to quash this subpoena. Second, as the government points out, one of the comptroller's two appearances before this grand jury resulted from the government's attempt to accommodate petitioner's avowed need for its current business records by permitting the submission of the documents in two stages. Third, compliance with prior subpoenas will not insulate a witness from successive subpoenas, absent a showing that the subpoena is unreasonable or that compliance would be oppressive. *See United States v. Weiner,* 418 F.Supp. 941, 953 (M.D. Pa.), *aff'd,* 546 F.2d 420 (3d Cir. 1976), *cert. denied,* 429 U.S. 1105, 97 S.Ct. 1135, 51 L.Ed.2d 557 (1977); *In re Grand Jury Subpoena to Central States, Southeast and Southwest Areas Pension Fund, August Term, 1963,* 225 F.Supp. 923, 924 (N.D.Ill. 1964); *In re Grand Jury Subpoena Duces Tecum Addressed to Provision Salesmen and Distrib. Local 627, supra,* 203 F.Supp. at 582–83. I do not imply that the cumulative impact of successive subpoenas may not at some point render compliance so unduly burdensome that the court will grant relief. I do hold, however, that this petitioner has failed to demonstrate that this subpoena marks the line between inconvenience and oppression.

■■■ Two final contentions merit brief mention. Petitioner complains of harassment, alleging that the federal investigation has languished for nearly three years without formal charges. Petitioner's argument on this score is unpersuasive for two reasons. First, petitioner's suggestion that the failure to bring an indictment or formal charges warrants relief from this subpoena misconceives the nature of the grand jury's probe. As the Supreme Court has stated, "examination of witnesses by a grand jury need not be preceded by a formal charge against a particular individual." *Blair v. United States, supra,* 250 U.S. at 282, 39 S.Ct. at 471 (citing *Hale v. Henkel, supra,* 201 U.S. at 65, 26 S.Ct. 370). Indictment is the end product of the inquiry, which

> "is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime. As has been said before, the identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's labors, not at the beginning."

*Blair v. United States, supra,* 250 U.S. at 282, 39 S.Ct. 468, 471 (citation omitted), *quoted in United States v. Bisceglia,* 420 U.S. 141, 147, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975).

Second, the prior activity of other governmental units or agents will not be permitted to thwart a valid grand jury investigation. *See United States v. Weiner, supra,* 418 F.Supp. at 954. As I have already found, the government's affidavit sufficiently demonstrates that this subpoena

aids a legitimate grand jury probe and that the documentation requested is to that end only. Therefore, petitioner's objections do not advance his claim for relief from this subpoena.

 Petitioner also complains that the "seemingly endless inquiries and probes into the operation of their businesses" has tarnished the names of the companies listed in the subpoenas. Furthermore, the petitioner alleges that the investigation has caused "great humiliation and concern to the officers. . . ." Here again, petitioner's appeal is unavailing. The embarrassment and humiliation that may result from the grand jury's inquiry neither render a subpoena unreasonable nor constitute oppressiveness which will support a motion to quash:

> "The duty to testify may on occasion be burdensome and even embarrassing. It may cause injury to a witness' social and economic status. Yet the duty to testify has been regarded as 'so necessary to the administration of justice' that the witness' personal interest in privacy must yield to the public's overriding interest in full disclosure."
>
> *United States v. Calandra*, 414 U.S. 338, 345, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974) (quoting *Blair v. United States, supra*, 250 U.S. at 281, 39 S.Ct. 468).

From the foregoing discussion, it is clear that this subpoena is reasonable and that the petitioner has failed to demonstrate that compliance would be oppressive. The motion to quash will therefore be denied.