**UNITED STATES of America,
Petitioner,**

v.

**Dan BOGGS, Custodian of Records for
the Blackfeet Tribal Business
Council, Defendant,**

**and**

**The Blackfeet Tribe of the Blackfeet
Indian Reservation, Defendant in
Intervention.**

**No. CV–80–51–Bu.**

United States District Court,
D. Montana,
Butte Division.

July 25, 1980.

MEMORANDUM and *ORDER*

WILLIAM D. MURRAY, Senior District Judge.

This action involves a United States grand jury investigation to determine whether 18 U.S.C. § 1163 (embezzlement and theft from Indian tribal organizations) has been violated. In its investigation the grand jury has subpoenaed records of tribal expenditures relating to the Blackfeet Hardship Give-Away Program. Defendant Boggs has refused to bring the records before the grand jury and the defendants now move the court to quash the grand jury's subpoena duces tecum. The court in considering defendants' arguments categorizes them as follows.

A. The subpoena should be quashed because its purpose is to gather evidence for a pending criminal indictment.

Defendants rely upon the general rule that a court will not enforce a grand jury subpoena if the purpose of the subpoena is to gather evidence for a pending criminal indictment. *E. g., Beverly v. United States*, 468 F.2d 732 (5th Cir. 1972). The rule is applicable when a grand jury has returned an indictment and then a grand jury is used to gather evidence for trial. A grand jury is not a substitute for discovery. *Id.* at 743.

The proposition upon which defendants rely is inapplicable in this case. No indictment has been returned against either defendant, i. e. there are no pending indictments for which this grand jury can be used as a discovery device. The grand jury is properly operating within its broad investigatory powers to determine whether a crime has been committed. See *Blair v. United States*, 250 U.S. 273, 281–282, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1918); *In re Grand Jury Investigation*, 32 F.R.D. 175 (S.D.N.Y.1963), *appeal dismissed*, 318 F.2d 533 (2d Cir. 1963), *petition for cert. dismissed*, 375 U.S. 802, 84 S.Ct. 25, 11 L.Ed.2d 37 (1963).

Robert T. O'Leary, U. S. Atty., Butte, Mont., for petitioner United States.

Joel E. Guthals of Wright, Tolliver & Guthals, Billings, Mont., for defendants.

B. The subpoena should be quashed because the records sought by the grand jury are tribal property entrusted to the tribe by Congress.

██ Defendants admit that there is no case support for their interpretation. They suggest, however, that the statutes vest in the tribe the right and power to "prevent the sale, disposition, lease, or encumbrance of . . . tribal assets without the consent of the tribe . . ." 25 U.S.C. § 476 (1934), and that the tribe's charter conveys to it the "power to . . . own, hold, manage, operate and dispose of property of every description . . ." 25 U.S.C. § 477 (1934). Defendants view the subpoenaed records as "tribal assets" pursuant to § 476, and somehow conclude that their power over those assets is exclusive. Read in context, however, § 476 refers to financial transactions respecting tribal assets. Similarly, taken in context, § 477 refers to incorporation and corporate transactions of a tribe. The court finds nothing in these statutes to justify the tribe's argument of immunity to grand jury subpoena power. Assuming arguendo that the tribe's conclusion is correct, however, the issue becomes whether Congress has acted to reduce the tribe's power over those assets. Sovereign immunity and the effect of 18 U.S.C. § 1163 upon the tribe's immunity are discussed below.

C. The subpoena should be quashed because it is an unreasonable and oppressive interference with tribal politics and government and with the tribe's management of its own affairs.

Similarly this argument, although made separately, relates to the sovereign immunity argument addressed *infra*. Independently, this argument cannot stand.

██ A grand jury cannot compel production of documents through a subpoena duces tecum if that production is "unreasonable or oppressive." *United States v. United States District Court*, 238 F.2d 713 (4th Cir. 1956), *cert. denied*, 352 U.S. 981, 77 S.Ct. 382, 1 L.Ed.2d 365 (1957). It appears that defendants have seized upon the term "unreasonable or oppressive" and argue that interference with tribal operations, if any, meets the requisite "unreasonable and oppressive" standard. Whether a subpoena duces tecum is unreasonable or oppressive, however, is a function of specific criteria. The subpoena must not be indefinite or overly broad; the information sought by the subpoena must be "particularly described" and relevant to the inquiry. *Okla. Press Pub. Co. v. Walling*, 327 U.S. 186, 208, 66 S.Ct. 494, 505, 90 L.Ed. 614 (1946). "A subpoena duces tecum must specify with reasonable particularity the scope of the materials it commands to be produced. If it meets that general standard, a subpoena duces tecum will be enforced; if it does not, it should be quashed without prejudice to issue a more reasonable and particularized one." *In re Grand Jury Proceedings*, 73 F.R.D. 647, 651 (1977) (citations omitted).

██ The grand jury subpoena at issue seeks particularly described information relevant to whether 18 U.S.C. § 1163 has been violated. The subpoena commands Mr. Boggs to bring "[r]ecords of Blackfeet Tribal Business Council relating to James E. Baker for disbursement of funds on hardship type giveaway programs for period July 1, 1976 to August 1, 1978."

D. The subpoena should be quashed because the tribe is a sovereign nation immune to grand jury subpoena powers.

Prior to the settling of this country the Indians were self-governing sovereign political communities, but Indian tribes are no longer "possessed of the full attributes of sovereignty." *United States v. Wheeler*, 435 U.S. 313, 322–323, 98 S.Ct. 1079, 1086, 55 L.Ed.2d 303 (1978). Upon their incorporation within the United States the Indian tribes yielded some sovereign powers. Congress through the exercise of plenary power has removed other sovereign powers. *Id.* at 323, 98 S.Ct. at 1086.

██ Today the Indian tribes are referred to as "quasi-sovereign" nations; the sover-

eignty they retain is of a "unique and limited" character. That sovereignty which remains "exists only at the sufferance of Congress and is subject to complete defeasance. *But until Congress acts*, the tribes retain their existing sovereign powers." *Id.* (emphasis added).

■ The defendants urge that this remaining sovereignty renders the tribe immune to the grand jury's subpoena power. This case then turns upon whether Congress in enacting 18 U.S.C. § 1163 diminished the Indian tribes' sovereignty. For example, whether there is unreasonable interference with tribal "property", "politics", "government", or "management of affairs" depends upon whether Congress has acted to allow that interference. Indian powers of local self-government are "subject to qualification by treaties and by express legislation of Congress." *Logan v. Andrus*, 457 F.Supp. 1318, 1322 n. 7 (1978), citing F. Cohen, Handbook of Federal Indian Law, 123 (1950). "Indians may well have exclusive rights of self-governance in purely intramural matters, unless Congress has removed those rights through legislation explicitly directed at Indians." *United States v. Farris*, 624 F.2d 890, 893 (9th Cir. 1980).

18 U.S.C. § 1163 provides in pertinent part:

> Whoever embezzles, steals, knowingly converts to his use or the use of another, willfully misapplies, or willfully permits to be misapplied, any of the moneys, funds, credits, goods, assets, or other property belonging to any Indian tribal organization or intrusted to the custody or care of any officer, employee, or agent of an Indian tribal organization; . . . shall be fined . . . or imprisoned . . . or both.
>
> As used in this section, the term 'Indian tribal organization' means any tribe, band, or community of Indians which is subject to the laws of the . . . corporation, association, or group which is organized under any of such laws.

Defendants argue that this statute does not subject the Blackfeet Tribe to compulsory process because it does not "authorize a United States grand jury to conduct investigations into tribal affairs or to subpoena tribal records." In support of this proposition defendants primarily offer *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). *Santa Clara*, however, is distinguishable. There the issue was whether a cause of action for declaratory or injunctive relief is implicit in the Indian Civil Rights Act which specifies a habeas corpus remedy. The court held that sovereign immunity barred the action since "[n]othing on the face of Title I of the ICRA purports to subject tribes to the jurisdiction of the federal courts . . . for injunctive or declaratory relief." *Id.* at 59, 98 S.Ct. at 1677. The Act specifies only habeas corpus relief, and the legislative history of the Act suggests that "Congress' failure to provide remedies other than habeas corpus was a deliberate one." *Id.* at 61, 98 S.Ct. at 1679. The Court therefore refused to infer the civil remedy sought.

■ Defendants further argue that a waiver of sovereign immunity cannot be implied, but results only from congressional consent. *People of State of Cal. v. Quechan Tribe of Indians*, 595 F.2d 1153, 1155 (9th Cir. 1979). The court held in *Quechan Tribe* that "[n]either the express terms of 18 U.S.C. § 1162, nor the Congressional (sic) history of the statute, reveal any intention by Congress for it to serve as a waiver of the Tribe's sovereign immunity . . . such a waiver may not be lightly implied." *Id.* at 1156 (citations omitted).

*Quechan Tribe*, however, involved hunting and fishing rights. "It is presumed that Congress does not intend to abrogate rights guaranteed by Indian treaties when it passes general laws, unless it makes specific reference to Indians. But this rule applies only to subjects specifically covered in treaties such as hunting rights; usually, general federal laws apply to Indians." *United States v. Farris*, 624 F.2d 890 at 893 (citations omitted). Yet even in *Quechan Tribe* the court looked to legislative intent in determining whether an invasion of Indian sovereignty had occurred.

Finally, defendants suggest that the rules of construction traditionally associated with Indian cases dictate an interpretation of 18 U.S.C. § 1163 in their favor. "The most general rule is that legislation affecting the Indians is to be liberally construed in their interest and *doubtful expression* resolved in their favor." *Logan v. Andrus*, 457 F.Supp. at 1324 (emphasis added). Indian legislation must also be construed, however, in light of the assumptions of the draftsmen and the policy which the legislation was intended to execute. *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 206, 98 S.Ct. 1011, 1019, 55 L.Ed.2d 209 (1978). Moreover, defendants *assume* that 18 U.S.C. § 1163 is ambiguous in applying the special rules of construction for Indian litigation. Where a United States statute is not ambiguous, there is no need for "indulging in uneasy statutory construction." *Barrett v. United States*, 423 U.S. 212, 217, 96 S.Ct. 498, 501, 46 L.Ed.2d 450 (1976).

18 U.S.C. § 1163 stands up well under defendants' attacks. First, it is not ambiguous. Its plain language is that "whoever" misapplies Indian tribal organization funds is subject to the jurisdiction of the United States for criminal penalty. Even if defendants contend that 18 U.S.C. § 1163 does not explicitly refer to Indians, i. e. that it is a general United States statute, (which is difficult to do since the statute appears under Crimes, 18 U.S.C., Chapter 53, entitled "Indians"), the law in the Ninth Circuit is that "usually, general federal laws apply to Indians." *United States v. Farris*, 624 F.2d at 893.

Assuming arguendo that the first criteria in *Santa Clara* is not met (i. e. that nothing on the face of the Act purports to subject tribes to the jurisdiction of the federal courts), we must look to the legislative history to determine whether Congress, in enacting 18 U.S.C. § 1163, intended to subject the tribes to federal jurisdiction. *Santa Clara Pueblo v. Martinez*, 436 U.S. at 59, 98 S.Ct. at 1677; *People of State of Cal. v. Quechan Tribe of Indians*, 595 F.2d at 1156. The legislative history of 18 U.S.C. § 1163 establishes an intent to subject the tribes to federal jurisdiction in matters of misappli-

cation of tribal funds. "The principal objective of the proposed bill is to protect Indian tribal organizations . . . from the actions of dishonest or corrupt tribal officials." S.Rep.No.2723, 84th Cong., 2nd Sess. 3, *reprinted in* [1956] U.S.Code Cong. & Admin.News, p. 3841. Many tribes control substantial sums of tribal money and expend them subject to the limitations of their tribal charters. Misapplication of those funds has occurred and tribal members largely have been without recourse; this bill provides protections to remedy that situation. *Id.* at 3842. This legislative history demonstrates congressional intent to subject Indian tribes to the United States' jurisdiction in 18 U.S.C. § 1163 matters. To hold that the Blackfeet Tribe is immune to process is to ignore that intent; the practical effect would be to render 18 U.S.C. § 1163 almost universally unenforceable.

IT IS THEREFORE ORDERED and this does order that the motion to quash the grand jury subpoena duces tecum be and the same is hereby denied.

IT IS FURTHER ORDERED and this does order that defendant DAN BOGGS produce within ten days at the United States Attorney's office "records of Blackfeet Tribal Business Council relating to James E. Baker for disbursement of funds on hardship type giveaway programs for period July 1, 1976 to August 1, 1978," and that the defendant in intervention, BLACKFEET TRIBE OF THE BLACKFEET INDIAN RESERVATION, having been granted the right to intervene is ordered not to interfere with DAN BOGGS' obeying the order of the court.