**In re GRAND JURY PROCEEDINGS.**

Civ. No. 88–00076.

United States District Court,
D. Hawaii.

March 7, 1989.

Brook Hart, Peter Wolff, Jr., Honolulu, Hawaii, Weil Gotshal & Manges, John Wing, New York City, for plaintiff.

Daniel Bent, Leslie Osborne, Honolulu, Hawaii, for defendant.

### ORDER GRANTING IN PART AND DE-NYING IN PART MOTION TO QUASH SIX GRAND JURY SUBPOE-NAS DUCES TECUM

FONG, Chief Judge.

### INTRODUCTION

On October 5, 1988, the government served six grand jury subpoenas duces tecum on Center Art Galleries–Hawaii, Inc. ("Center Art") that were made returnable at 9:00 a.m., October 20, 1988. These subpoenas were issued as part of the government's continuing investigation into alleged art fraud being perpetrated at Center Art.

Movants have refused to comply with the subpoenas' terms and now ask this court to quash all six on the basis of numerous alleged deficiencies. Oral arguments before the court were heard on December 6 and 7, 1988; Brook Hart and John R. Wing appeared on behalf of defendant Center Art, and Leslie E. Osborne appeared on behalf of the government. Although the government paints a distressing picture of ongoing affairs within Center Art in its attempt to justify the scope of its subpoenas, the court finds merit to Center Art's claims. Accordingly, the court grants in part and denies in part movant's motions to quash.

## BACKGROUND

After having initiated a continuing investigation into alleged widespread art fraud perpetrated by Center Art, the government executed a search warrant at its executive office, warehouse, and four galleries in Oahu on April 15, 1987. At that time, the government seized five truckloads of art, documents, books, ledgers, records, and other objects. The government later copied many of these seized documents, including Center Art's legal files.

On February 1, 1988, in response to Center Art's challenge of the search warrant authorizing this search, Judge Rafeedie ordered the return of all property seized by the government, except for prints and other works of art attributed to Salvador Dali. Judge Rafeedie issued a published opinion on this ruling on February 26, 1988. *See In re Motion for Return of Property Pursuant to Rule 41, Fe.R.Crim.P.,* 681 F.Supp. 677 (D.Haw.1988). In his opinion, Judge Rafeedie held that the government's warrants were unconstitutionally broad. *Id.,* 681 F.Supp. at 680. The court's opinion was based on the fact that the only evidence of fraud contained in the warrant's supporting affidavit related to works attributed to Salvador Dali. Since the court found no evidence suggesting that Center Art's alleged fraud permeated the works of other artists, the warrant failed to satisfy the Fourth Amendment's "particularity" requirement with respect to all other artworks. Accordingly, Judge Raf-

eedie ordered evidence relating to all artists, save for Dali, to be suppressed and returned to Center Art.

In reaching his decision, Judge Rafeedie rejected the government's "inevitable discovery" argument. The government, which at that time was in possession of the relevant evidence, had attempted to cure the warrant's defects by relying on its grand jury subpoenas of equivalent scope that were served on Center Art subsequent to the illegal search. In effect, the government claimed that all evidence inevitably would have been discovered through the subpoenas, so that this evidence need not be excluded nor returned. However, Judge Rafeedie determined that similar problems of overbreadth, which were fatal to the search warrants, also rendered the subpoenas unenforcable. The court, in fact, concluded that because the government already held the evidence in question, the subpoenas were nothing more than a government insurance policy in case the search later was invalidated.

Subsequently on March 23, 1988, Judge Rafeedie denied the government's motion for reconsideration and stay of his order. In its reconsideration motion, the government had argued that the seized property was being held pursuant to a recently issued grand jury subpoena and, thus, need not be returned. In rejecting the government's argument, the court held the following:

> [i]f property is impermissably [sic] held by the government pursuant to an illegal search and seizure, and that defect can be cured merely by issuing a subpoena after the seizure, then the subject of the subpoena would be precluded from raising any rights it may have in opposing the subpoena because the property is already in the government's possession ... If the government wishes to enforce the subpoena as to material seized in the raid, it must await the return of property pursuant to this Court's Order.

Order Denying Motion to Stay and Motion to Reconsider, Civil No. 88–76 (March 23, 1988), at 3.

Having failed in its attempts, pursuant to both warrants and subpoenas, to seize Center Art's property for its investigation into alleged art fraud, the government commenced with the property's return. Although the government did return to Center Art the seized property itself, however, it withheld copies of the same property for purposes of its investigation. In its Order of October 31, 1988, this court rejected the government's distinction with regard to the copies and ordered their immediate return as well. This court reasoned that Judge Rafeedie's order nowhere suggested that copies were exempt from the original return order. Furthermore, the court in its Order of October 31, 1988, granted two motions to quash grand jury subpoenas duces tecum which had been served on Center Art.

Center Art's first of these two motions to quash, which motion was filed on June 29, 1988, responded to the government's so-called "all documents" subpoena issued on May 12, 1988; this subpoena requested the production of "any and all documents" from July 1, 1977, to the present "relating to Center Art Galleries–Hawaii, Inc...." According to the subpoena's terms, these documents were to include the following:

all records now in the custody of Center Art Galleries at any location maintained by them on the island of Oahu or previously maintained by them at [the four Oahu galleries, the warehouse, and the office].

The subpoena's attachment then listed items identical to those in the warrants that previously had been found to be unconstitutionally overbroad.

With respect to Center Art's first motion to quash, this court found that the government's "all documents" subpoena was an attempt "to circumvent the court's order to return property." Order Granting Motion for Immediate Compliance With Court's Order and Granting Motions to Quash, Civil No. 88–76 (October 31, 1988), at 10. First, this court found the government's subpoena to be unconstitutionally overbroad in scope, making compliance with it both unreasonable and oppressive. This conclu-

sion largely was based on the fact that the subpoena's terms mirrored those of the unconstitutional warrant, as well as the fact that the only evidence of Center Art fraud at the time related to works by Salvador Dali. Moreover, the court granted Center Art's motion to quash, because the government still possessed copies of the wrongfully seized items. In this regard, the court concluded that "the government is not entitled to the documents they seek until they return *all* property they obtained from the seizure, including copies." *Id.* at 12. Further emphasizing this point, the court continued with the following: " '[i]f the government wishe[d] to enforce the subpoena as to material seized in the raid, *it must await the return of the property pursuant to this Court's Order.*' " *Id.*, *quoting* Order of March 23, 1988, at 3. (emphasis in the original).

Center Art's second of its two motions to quash, which motion was filed on July 13, 1988, also responded to a grand jury subpoena issued on May 12, 1988. This second subpoena sought the production of any and all records and documents relating to 81 images of Dali artwork, including the artwork itself. Defending the scope of its second subpoena, the government argued that it was entitled to these requested documents under the "independent source" exception to the exclusionary rule. In essence, the government argued that it was entitled to such production, since it had issued a subpoena equal in scope to the "all documents" subpoena prior to the invalid search—thus, the independent source. In this way, the government sought the production of actual property for which it then only had copies.

Faced with this second motion to quash, this court first rejected the government's reliance on its original "all documents" subpoena as being a "catch-all cure for the illegal search." *Id.* at 14. The court emphasized that this alleged independent source was identical to the "all documents" subpoena already found to be unconstitutionally overbroad. The court, however, did note that "the subpoena seeking production of Dali artwork and related documents may well derive from a source inde-

pendent of the illegal search." *Id.* at 14–15. Nevertheless, since the government had failed to identify that independent source, Center Art's motion to quash was granted "subject to the government's later ability to establish that the subpoena was issued pursuant to information obtained independently of the illegal search and seizure." *Id.* at 16.

After this string of misfortune with its previous warrants and subpoenas, the government on October 5, 1988, served on Center Art six additional grand jury subpoenas duces tecum. The enforcability of these subpoenas is the issue that now faces this court. Center Art seeks to quash each of the six subpoenas on various grounds: 1) they unconstitutionally attempt to acquire property seized during the course of an illegal search and seizure, as well as material now fatally "tainted" by that same illegal search; 2) they are overbroad in scope, in violation of the Fourth Amendment and Rule 17(c) of the Federal Rules of Criminal Procedure; 3) they are unreasonable and oppressive in violation of the Fourth Amendment and Rule 17(c); 4) they constitute an unconstitutional "taking" of property without just compensation in violation of the Fifth Amendment; and 5) they prevent the public display and sale of artwork, in violation of the First Amendment. The court will address the validity of each of the six subpoenas within the context of those arguments relevant to each individually.

## DISCUSSION

### I. THE EXCLUSIONARY RULE CHALLENGE

■ Center Art first challenges the instant subpoenas on grounds that they call for the production of many of the same documents previously ordered to be suppressed due to the invalid search of April 15, 1987. According to the movant, previous decisions by this court on this matter preclude the government's use of grand jury subpoenas for such purposes. Thus, Center Art calls the government's issuance of these subpoenas a "flagrant attempt to circumvent and disregard the Fourth Amendment and this court's previous rulings;" to permit the government to use grand jury subpoenas to reacquire previously suppressed items would be to license wholesale violations of the Fourth Amendment, thereby reducing such constitutional protections to a nullity.

Initially, by ignoring the specific context in which this court was in review on prior occasions, Center Art mischaracterizes its previous rulings that have dealt with the exclusionary rule's application to the facts of this case. When scrutinized by this court, the two grand jury subpoenas previously in dispute had been issued while the government was in continuing violation of prior court orders. Specifically, the government wrongfully had retained copies of many of the same illegally seized documents it again attempted to have produced. In the situation now before the court, on the other hand, no such lingering violation persists.. The record indicates that the government now fully has complied with previous court orders compelling it to return all illegally seized property to Center Art, including copies of the seized evidence.

This contextual distinction is relevant to the court's resolution of the motions to quash now before it, as both Judge Rafeedie and this court previously have noted:

> [i]f the government wishes to enforce the subpoena as to material seized in the raid, *it must await the return of property pursuant to this Court's Order.*

*E.g.,* Order of March 23, 1988, at 3; Order of October 31, 1988, at 9 (emphasis in the originals). Both courts reasoned that subjects of searches materially can raise any rights they may have to oppose subsequent curative subpoenas, only if the wrongfully seized evidence is returned prior to the issuance of those subpoenas. *Id.* Since the government now has complied with this express direction by returning all copies of seized materials to Center Art, the subpoena process no longer should be foreclosed to it.

Viewed in this light, although Center Art's sense of alarm with regard to the government's evidence-gathering process is understandable, it is premature at this

point. This conclusion necessarily follows from the context in which this case is postured—the grand jury setting. *See U.S. v. Calandra*, 414 U.S. 338, 342–344, 94 S.Ct. 613, 617–618, 38 L.Ed.2d 561 (1974) (the court details the unique attributes of grand juries in the criminal setting by comparing them to petit juries). Due to this grand jury context, this court finds that Fourth Amendment concerns are not to be addressed now, but rather at the time the government seeks to introduce any illegally seized evidence at trial; at this point, the government's use of subpoenas to gain access to the previously suppressed evidence is entirely within the law. Throughout its discussion of the exclusionary rule's applicability to the present situation, Center Art consistently ignores this basic determinative fact.

■ The exclusionary rule, therefore, is completely irrelevant to issues involving the operation of grand juries in their evidence-gathering role when the evidence presented to them is obtained through lawful subpoenas; precedent compels this result. *See U.S. v. Calandra*, 414 U.S. 338, 349–350, 94 S.Ct. 613, 620–621, 38 L.Ed.2d 561 (1974) (the Court refused to extend the exclusionary rule's protections to grand jury proceedings, because to do so "would precipitate adjudication of issues hitherto reserved for the trial on the merits and would delay and disrupt grand jury proceedings"). *See also U.S. v. Zielezinski*, 740 F.2d 727, 732 (9th Cir.1984) (noting that grand jury indictments cannot be challenged on Fourth Amendment grounds, the court concluded that questions contesting indictments "will not be heard where they rest on objections to the evidence-gathering process"); *U.S. v. Sears, Roebuck & Co., Inc.*, 719 F.2d 1386, 1391 n. 7 (9th Cir.1983), *cert. denied*, 465 U.S. 1079, 104 S.Ct. 1441, 79 L.Ed.2d 762 (1984) ("[i]t is well settled law ... that evidence may be used [in grand jury proceedings] even if obtained in violation of the exclusionary rule"); *U.S. v. Vandemark*, 522 F.2d 1019, 1021 (9th Cir. 1975) ("unconstitutionally seized evidence may be introduced in grand jury proceedings"). As the Supreme Court noted in *Calandra:*

[d]espite its broad deterrent purpose, the exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons.

*Id.*, 414 U.S. at 348, 94 S.Ct. at 620.

Although *Calandra* specifically dealt only with the issue of whether a grand jury witness could be asked questions which were based on facts derived from a previously unlawful search and seizure, the Court's holding was broad:

[o]ur conclusion necessarily controls both the evidence seized during the course of an unlawful search and seizure and any question or evidence derived therefrom (the fruits of the unlawful search).

*Id.*, 414 U.S. at 354, 94 S.Ct. at 623. (emphasis added). Thus, the Court limited the grand jury's subpoena power only to the extent that such power violates a valid privilege, such as when the issuance of an unreasonably overbroad subpoena duces tecum impinges on Fourth Amendment privacy interests—interests which are not at stake here. *Id.*, 414 U.S. at 346, 94 S.Ct. at 619.

That the Supreme Court in *Calandra* clearly meant for its decision to apply to situations involving subpoenas of previously suppressed evidence is evident from the way it distinguished its facts from those in *Silverthorne Lumber Co. v. U.S.*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920), which case is heavily relied upon by Center Art. Upon the facts before it in *Silverthorne*, the Supreme Court previously did, in fact, hold that the government could not compel the production of unlawfully seized documents through the use of subsequent grand jury subpoenas duces tecum. However, the *Calandra* Court distinguished its facts from those in *Silverthorne* by noting that the movants in the latter case, unlike the situation before it, already had been indicted by the grand jury. In other words, the movants in *Silverthorne* "could invoke the exclusionary rule on the basis of their status as criminal defendants." *Calandra*, 414 U.S. at 352, n. 8, 94 S.Ct. at

622, n. 8. Similarly, the facts here are distinguishable from those in *Silverthorne*, because Center Art has yet to be indicted and, thus, is not a criminal defendant standing before this court. Furthermore, as noted by the Court in *Calandra*, unlike the present investigation focused on Center Art, the information sought by the government in *Silverthorne* was unnecessary for the grand jury's ability to perform its investigative or accusatorial functions. *Id.* Finally, the Court in *Calandra* noted that *Silverthorne*'s broad dictum which suggested a contrary result "has been substantially undermined by later cases." *Id.*

Accordingly, *Silverthorne* and all other decisions relied upon by Center Art are inapposite to the present context. *See, e.g., U.S. v. Huberts,* 637 F.2d 630, 639 (9th Cir.1980), *cert. denied,* 451 U.S. 975, 101 S.Ct. 2058, 68 L.Ed.2d 356 (1981) (although noting in *dicta* that previously suppressed evidence cannot be unlawfully presented to grand juries in violation of the exclusionary rule, the court found the evidence to be admissible under both the "independent source" and "inevitable discovery" exceptions to that rule); *U.S. v. Busk,* 730 F.2d 129, 130 (3d Cir.1984) (where no mention of valid subpoenas was evident in the record, the court implied in *dicta* that the introduction of previously suppressed evidence in a grand jury proceeding "might well be" inappropriate). Thus, Center Art must preserve for trial all allegations of wrongfully seized evidence.

Upon reflection, the court's decision invalidating Center Art's reliance on the exclusionary rule in the grand jury setting is appropriate given the grand jury's role in the criminal process. Grand juries hold a unique position in the American criminal justice system, in that they serve purely an investigative and accusatorial function—grand juries are not involved in the final adjudication of guilt or innocence. *Calandra,* 414 U.S. at 349, 94 S.Ct. at 620. Accordingly, "[t]he grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered." *Id.,* 414 U.S. at 344–345, 94 S.Ct. at 618. The Court of Appeals for the Ninth Circuit

has reiterated this point, noting that despite their broad mandate of review, grand jury's do not impinge on individual rights in the constitutional sense due to the following:

> [b]oth because the grand jury's determination is a preliminary one, and because the full panoply of constitutional protections will be available at trial ...

*Sears, Roebuck & Co.,* 719 F.2d at 1391, n. 7. *See also Calandra,* 414 U.S. at 347–348, 94 S.Ct. at 619–620. Thus, Center Art will be fully and constitutionally protected when it later seeks to prevent the admission of previously suppressed evidence at trial. *See U.S. ex rel. Roberts v. Ternullo,* 407 F.Supp. 1172, 1178 (E.D.N.Y.1976) (the court held that unlawfully seized mechanics liens "were acceptable for grand jury purposes but nothing else," despite not being legally admissible as evidence of defendant's criminal acts).

Furthermore, exclusion of this evidence from the grand jury's consideration on Fourth Amendment grounds would do little to promote the exclusionary rule's fundamental purpose—deterrence. *Calandra,* 414 U.S. at 349–351, 94 S.Ct. at 620–621. As the Supreme Court noted in *Calandra:*

> [a]ny incremental deterrent effect which might be achieved by extending the rule to grand jury proceedings is uncertain at best. Whatever deterrence of police misconduct may result from the exclusion of illegally seized evidence from criminal trials, it is unrealistic to assume that application of the rule to grand jury proceedings would significantly further that goal ... The incentive to disregard the requirement of the Fourth Amendment solely to obtain an indictment from a grand jury is substantially negated by the inadmissibility of the illegally seized evidence in a subsequent criminal prosecution of the search victim. For the most part, a prosecutor would be unlikely to request an indictment where a conviction could not be obtained.

*Id.,* 414 U.S. at 351, 94 S.Ct. at 621–622.

█ Additionally, even if Center Art were not foreclosed by precedent from as-

serting the exclusive rule in order to quash the instant subpoenas, it could not now succeed by relying on those Fourth Amendment arguments. In other words, the court is convinced that the government adequately has identified legitimate "independent sources" for the evidence it now seeks to subpoena. Such "independent sources" allow the government to legally introduce evidence previously "tainted" by an unlawful search and seizure. *See Murray v. U.S.*, — U.S. —, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988) (the Court reaffirmed the "independent source" doctrine's continued vitality).

The government's first subpoena, the so-called "Dali and Other Artist" Subpoena, compels the production of various documents relating to the sale, production, and manufacture of works attributed to Dali, as well as to other artists including Chagall, Murow, Tony Curtis, Anthony Quinn, and Red Skelton. With regard to this subpoena, the court is satisfied that the government derived knowledge of these documents through independent means— the deposition testimonies of Center Art's William Mett and Theodore Wiseman, as well as the grand jury testimonies of artists Quinn, Curtis, and Skelton.

With regard to the second so-called "81 Images" subpoena and the third "Three Images" subpoena, the court is satisfied that their independent sources are found in the detailed descriptions provided to the government by Center Art when the gallery previously complied with other grand jury subpoenas. Finally, subpoenas four, five, and six—the Anthony Quinn, Tony Curtis, and Red Skelton "Celebrity Artists" subpoenas—all request identical information regarding the works of these artists. Since these celebrity artists already have testified before the grand jury as to the existence of the documents here at issue, the court is satisfied that these three subpoenas are also grounded upon a legitimate "independent source."

Accordingly, Center Art's reliance on the exclusionary rule to quash the six government subpoenas is doubly misplaced. Precedent compels this court to hold that the exclusionary rule does not apply to parties who have been subpoenaed by the government to produce documents solely for grand jury edification. Moreover, even if applicable, the exclusionary rule here would not bar the introduction of this evidence to the grand jury, since the government now adequately has shown an "independent source" for the information it seeks.

However, merely because the government is not prohibited from having Center Art's previously suppressed documents subpoenaed, does not mean that the U.S. attorneys are relieved from satisfying their other burdens before the court. Accordingly, for this court to uphold the legitimacy of the six subpoenas now in dispute, it first must be satisfied that the subpoenas are neither unconstitutionally overbroad nor unduly burdensome and oppressive. Thus, this court now addresses Center Art's second contention relating to the issue of overbreadth.

## II. THE ISSUE OF UNCONSTITUTIONAL OVERBREADTH AND BURDEN

Center Art next contends that all six subpoenas must be quashed on the basis of unconstitutional overbreadth, as well as because production would unduly burden their business operations in violation of Rule 17(c) of the Federal Rules of Criminal Procedure. *See, e.g., Calandra,* 414 U.S. at 346, 94 S.Ct. at 619; *Hale v. Henkel,* 201 U.S. 43, 71, 26 S.Ct. 370, 377, 50 L.Ed. 652 (1906). Specifically, Center Art contends that compliance would "require review of millions of pages of documents, and demand production of massive amounts of documents relating to numerous artists and artworks not mentioned in the search warrant affidavit." (Memorandum of Center Art, p. 40).

In response to Center Art's second argument, the court first notes that merely because the government's subpoena requests may interfere with Center Art's business operations is an inadequate reason for this court to grant its motions to quash. As the Supreme Court has noted, "while the duty [to comply] may be 'oner-

ous' at times, it is 'necessary to the administration of justice.' " *U.S. v. Dionisio*, 410 U.S. 1, 10, 93 S.Ct. 764, 769, 35 L.Ed.2d 67 (1973), *quoting Blair v. U.S.*, 250 U.S. 273, 281, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919). Thus, hardship alone does not justify the quashing of an otherwise proper subpoena. *Id.*, 410 U.S. at 9–10, 93 S.Ct. at 769. *But see Hale v. Henkel*, 201 U.S. 43, 76–77, 26 S.Ct. 370, 379–380, 50 L.Ed. 652 (1906). Moreover, these six subpoenas cannot be quashed merely because the government has requested documents outside the previous scope of its investigation into Center Art fraud. *In re Grand Jury Proceedings (John Doe)*, 801 F.2d 1164, 1170 (9th Cir.1986). Accordingly, Center Art's motions to quash can be granted on the basis of unconstitutional overbreadth only if the government subpoenas are " 'far too sweeping in [their] terms to be regarded as reasonable' under the Fourth Amendment." *Calandra*, 414 U.S. at 346, 94 S.Ct. at 619, *quoting Hale v. Henkel*, 201 U.S. at 76, 26 S.Ct. at 380. *See also U.S. v. Wencke*, 604 F.2d 607, 612 (9th Cir.1979). "Sweeping," as understood by courts within the Ninth Circuit, does not go to the issue of relevance, since the government is presumed to obey the law and seek only appropriate materials in its investigative pursuits. *See In re Grand Jury Proceedings (John Doe)*, 801 F.2d at 1170. *See also Dionisio*, 410 U.S. at 15, 93 S.Ct. at 772 (the Court held that the government need not make a preliminary showing of "reasonableness").

Recently, the U.S. District Court for the Eastern District of Washington addressed this very issue of unconstitutional overbreadth in the subpoena context. *See In re Grand Jury Proceedings S. Feb. 27, 1984*, 599 F.Supp. 1006 (E.D.Wash.1984). According to that court, the U.S. Supreme Court has retreated from its previous position requiring traditional Fourth Amendment standards of specificity and particularity in the issuance of subpoenas duces tecum. *Id.*, 599 F.Supp. at 1017. Rather, as the district court noted, the appropriate standard seems to be "a more amorphous requirement of 'reasonableness.' " *Id.*, 599 F.Supp. at 1017–1018. This conclusion is supported within the Ninth Circuit by the following reasoning of the U.S. District Court of Montana:

> [w]hether a subpoena duces tecum is unreasonable or oppressive ... is a function of specific criteria. The subpoena must not be indefinite or overly broad; the information sought by the subpoena must be "particularly described" and relevant to the inquiry [citation omitted]. "A subpoena duces tecum must specify with reasonable particularity the scope of the materials it commands to be produced."

*U.S. v. Boggs*, 493 F.Supp. 1050, 1052 (D.Mont.1980), *quoting In re Grand Jury Proceedings*, 73 F.R.D. 647, 651 (M.D.Fla. 1977).

Nevertheless, although it emphasized the standard of "reasonableness" in its opinion, the Eastern District of Washington also concluded that "relevancy and overbreadth are factors which should be considered in a 'reasonableness' analysis." *In re Grand Jury Proceedings S. Feb. 27, 1984*, 599 F.Supp. at 1018. However, aside from partly contradicting itself in its opinion by then also noting that the Ninth Circuit Court of Appeals does not require "a showing of need and relevance," the court concluded that "this circuit has not shed much light on the constitutional 'reasonableness' standard or the Rule 17(c) 'oppressive and unreasonable' prohibition." *Id.* The district court's schizophrenia, with regard to whether any showing of relevancy must be made by the government in its subpoena requests, is indicative of the confused state of the law on this issue. *See In re Grand Jury Subpoena (Battle)*, 748 F.2d 327, 330 (6th Cir.1984) (much like the Ninth Circuit Court of Appeals, this court held that the government need not make a preliminary showing of relevancy prior to the issuance of grand jury subpoenas; however, the court then expressly contradicted its own holding by noting that the government must make a "minimal showing" of relevance once the moving party has shown that the information sought "bears no conceivable relevance to any legitimate object of investigation by the federal grand jury"). Thus, upon completing its lengthy

overbreadth analysis, the Eastern District of Washington merely concluded that the applicable standard within the Ninth Circuit "appears to be simply one of 'reasonableness.'" *In re Grand Jury Proceedings S. Feb. 27, 1984,* 599 F.Supp. at 1018–1019.

■ Accordingly, the district court offered little guidance to other courts faced with making similar determinations of overbreadth. However, the court did note that it inherently had the power to act on the subpoena before it pursuant to its supervisory power. *Id.,* 599 F.Supp. at 1018. Thus, courts may quash, modify, or otherwise exercise their supervisory discretion over subpoenas to prevent wrongs before they occur. *Calandra,* 414 U.S. at 346, 94 S.Ct. at 619. Acting on such inherent supervisory capacity, the U.S. District Court of Nevada found the following subpoena request to be unreasonable due to insufficient particularity:

> [movant was required to produce] *all other records not specifically enumerated above* which reflect or are related to the financial activities of those fourteen individuals or entities listed ...

*In re Grand Jury Proceedings Witness Bardier,* 486 F.Supp. 1203, 1214 (D.Nev. 1980). (emphasis added). Without establishing any guidelines to instruct courts as to its analysis, the District Court of Nevada simply noted that the above request was so overbroad as to render it unenforceable—the movant could not possibly know what records and documents were being sought. Thus, the demand was held to be "so onerous in its burden as to be out of proportion to the end sought." *Id.*

Having conducted its own independent analysis into the appropriate standard of review on this issue of overbreadth and burden, this court also notes that courts within the Ninth Circuit have failed to develop a particularized approach to such questions in the subpoena context. However, courts within other Circuits have made efforts to do so. Specifically, certain courts have adopted the following three-prong test to determine whether the pre-requisites of the Fourth Amendment and Rule 17(c) have been satisfied:

1. whether the subpoena commands the production of documents relevant to the grand jury investigation;

2. whether the demand for the documents is made with reasonable particularity; and

3. whether the request spans a reasonable period of time.

*In re Grand Jury Investigation,* 459 F.Supp. 1335, 1341 (E.D.Penn.1978). *See also In re Rabbinical Seminary, etc.,* 450 F.Supp. 1078, 1084 (E.D.N.Y.1978) (J. Nickerson).

■ With regard to the three-prong approach noted above, this court initially notes that an identical test cannot control the disposition of this case, because the Ninth Circuit Court of Appeals expressly has held, and Center Art concedes, that a showing of relevance is unnecessary under the law within this Circuit. *See In re Grand Jury Proceedings (John Doe),* 801 F.2d at 1170. However, the other two requirements of "reasonable particularity" and "reasonable time" at least implicitly are, in fact, applicable in the present context; this court may be guided by these two prongs of the above three-part test. Additionally, the court will look to the sheer quantity of materials sought by the government subpoenas as being relevant, if not determinative, to its resolution of this overbreadth issue. Within this framework, the court now will examine each of the six subpoenas individually on the question of overbreadth and burden.

**A. The "Dali and Other Artist" Subpoena**

■ The government's "Dali and Other Artist" subpoena first asks for "[a]ll contracts and agreements with supporting documentation ... from 1977 to the present" relating to the works of artists Dali, Chagall, Miro, Curtis, Quinn, and Skelton. The subpoena also demands that Center Art produce voluminous supporting documentation for each such contract located, including such items as "[m]inutes of staff meeting [sic] relating to *any* discussion concern-

ing Salvador Dali, Miro and Chagall art." (emphasis added). When reviewing the scope of this subpoena with emphasis on the three-prong test noted above as being relevant to its determination, this court is convinced that the subpoena is sufficiently overbroad as to make its terms unenforceable. Accordingly, the "Dali and Other Artist" subpoena suffers from the same unconstitutional overbreadth as did the government's two subpoenas previously rejected by this court.

Specifically, the instant subpoena is insufficiently particularized to allow Center Art to discern which documents are being sought by the government; thus, this subpoena fails to satisfy the court's "reasonableness" test. *See In re Grand Jury Proceedings Witness Bardier*, 486 F.Supp. at 1214. The court's conclusion in this regard is necessary to protect Center Art and its employees from contempt, merely because they may be confused as to what exactly was being asked from them to produce. *See In re Grand Jury Proceedings*, 601 F.2d 162, 165 (5th Cir.1979) (the court vacated the contempt judgment issued against the subjects of grand jury subpoenas duces tecum, when the subpoenas were "so unqualified and pervasive in scope that [they] required [the subjects] to determine at [their] peril what documents [they] were required to produce").

Moreover, Center Art's compliance with this subpoena would involve virtually its entire staff in document production for months, if not years, grinding Center Art's business to a complete halt. *Cf. Premium Service Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir.1975) (in the civil context, the court affirmed a motion to quash subpoenas duces tecum under Fed.R. Civ.P. 45(b), when the requests "were sweeping in nature, covering every paper touching on any relationship between S & H and Walker–Scott or Scott personally. Compliance would have required extensive sifting and analysis by Walker–Scott employees"). Due to this fact alone, the court may find the government's sweeping request to be unwarranted at this time.

Finally, the court finds the subpoena's relevant time period, dating back from 1977 through the present, to be unreasonable in light of the relevant case law. Specifically, the fact that the applicable statute of limitations for the offenses charged in this case is five years, while the government's subpoena asks for information dating back eleven years, exemplifies the tremendous overbreadth of the government's request. *See, e.g., In re Rabbinical Seminary, etc.*, 450 F.Supp. at 1084 (the court upheld the instant subpoenas' validity as being reasonable, in part because their relevant time period of seven years was not "impermissibly extensive"); *In re Grand Jury Investigation*, 459 F.Supp. at 1343 (the court did not find the time period of five to six years to be unreasonable, when that period approximated the relevant statute of limitations); *In re Grand Jury Proceedings (John Doe)*, 801 F.2d at 1170 (the court upheld the subpoena's validity against the charge that it requested the production of documents dating back roughly two to three years, noting that the applicable statute of limitations was, in fact, five years). Despite the government's allegations of continuing and pervasive fraud at Center Art, the court remains unconvinced that the request going back to 1977 is warranted at this time. *But see In re Grand Jury Investigation*, 459 F.Supp. at 1343.

Because the court, therefore, is not convinced that this subpoena is sufficiently particularized in its scope, and because the government requests the production of documents relating to artists Miro and Chagall without having shown any probative need for their use, Center Art's motion to quash the "Dali and Other Artist" subpoena on the basis of overbreadth and burden is granted. Center Art already has suffered "substantial" injury as a result of the government's unfocused investigation into the alleged art fraud. Order of March 23, 1988, at 5. The court should not exacerbate such injury unless clearly warranted by the record.

**B.** *The "81 Images" Subpoena*

■ Center Art next contests the scope of the government's "81 Images" subpoena

which requests the production of both documentation related to 81 artworks attributed to Salvador Dali, as well as production of the artworks themselves. In response to this second argument of overbreadth, the court notes that it previously has considered the reach of the identical subpoena now at issue, finding it to be sufficiently particularized in scope to be valid. *See* Order of October 31, 1988, at 14. Accordingly, since the court is bound by its previous decision on this issue, it rejects Center Art's renewed attempt to find overbreadth here.

### C. The "Three Images" Subpoena

█ Similarly, the court rejects Center Art's arguments of overbreadth and burden with regard to the government's so-called "Three Images" subpoena. Much like that involving the "81 Images" subpoena, this subpoena demands the production of "[a]ll documents related to the acquisition of, manufacture of, sale of, appraisal of and shipping of" three artworks attributed to Salvador Dali. As is the case with the "81 Images" request, this "Three Images" subpoena is enforceable in view of the fact that Dali-related fraud appears to be the cornerstone of the government's investigation into Center Art. *Id.* Moreover, the government has concluded that none of the Dali artwork already legally in its possession, which has been analyzed by "an expert," is "unquestionably genuine." Finally, compliance with this specific subpoena does not appear to be "unreasonable or oppressive" in violation of Rule 17(c) of the Federal Rules of Criminal Procedure.

### D. The "Celebrity Artists" Subpoenas

█ Grand jury subpoenas four, five, and six, which subpoenas pertain to celebrity artists Anthony Quinn, Tony Curtis, and Red Skelton, all follow the same form by requesting production of:

[a]ny and all records described in Exhibit A to this subpoena from the initial date of any contractual relationship between Center Art Galleries and [the celebrity artist] until the date of the service of this subpoena ...

Exhibit A, attached to each of these three subpoenas, then lists 21 specific requests for production, which requests are extremely general in nature. Illustrative of such generality in the subpoenas' specific terms is the following production request:

[Center Art must produce] the names, addresses, employment dates and amount of compensation for *any and all individuals* employed by Center Art Galleries for the purpose of assisting or providing assistance to [celebrity] art ... (emphasis added).

In response to these three subpoenas, Center Art reiterates its arguments of overbreadth and burden.

Much like the court's previous conclusion with regard to the "Dali and Other Artist" subpoena, the "Celebrity Artists" subpoenas all must be quashed for being hopelessly overbroad. Rather than having developed any logical, particularized production scheme in its subpoena requests, the government merely asks for "everything." Thus, these three subpoenas also lack sufficient particularity, as well as involve an overly lengthy time period of eleven years, thereby invalidating the magnitude of their scope. Such "catch-all" fishing expeditions evidence an abuse of the subpoena process and cannot be tolerated. *Cf. Bowman Dairy Co. v. U.S.*, 341 U.S. 214, 221, 71 S.Ct. 675, 679, 95 L.Ed. 879 (1951) (in a different subpoena context, the court concluded that "catch-all" subpoena provisions are invalid). The court finds that the monetary and human costs associated with such compliance clearly would be oppressive to Center Art and are unwarranted in the form requested.

Merely because the government contends that these three subpoena requests are based on grand jury testimony by the celebrity artists themselves, is an insufficient reason to validate the subpoenas' expansive terms. This is especially true where, as here, the government has failed to attach these celebrity transcripts to the record. Rather, the government merely asks the court to rely on its own evaluation of the grand jury testimony in order to reach the same conclusion; this the court refuses to

do. The court, therefore, finds that the government has failed to proffer sufficient evidence of fraud permeating the works of the celebrity artists to justify the great magnitude of the subpoena requests. Accordingly, the court will grant Center Art's motion to quash the "Celebrity Artists" subpoenas on the basis of unconstitutional overbreadth and Rule 17(c).

## III. THE FIFTH AMENDMENT ISSUE OF UNCONSTITUTIONAL "TAKINGS"

■ With respect to the "81 Images" subpoena, Center Art next contends that compliance with the government's production request would work an unconstitutional "taking" of its property without just compensation in violation of the Fifth Amendment. Specifically, in light of the government's continued retention of approximately 261 previously subpoenaed Dali prints, which retention is court-approved, the government can be expected to indefinitely retain $214,000.00 worth of their Dali art. Because the "Three Images" subpoena does not request production of the artwork itself, Center Art's "takings" argument applies only to the "81 Images" subpoena.

In response to Center Art's Fifth Amendment argument, the court rejects it as being wholly without merit. *See Matter of Berry*, 521 F.2d 179, 184 (10th Cir.1975), *cert. denied*, 423 U.S. 928, 96 S.Ct. 276, 46 L.Ed.2d 256 (1975), *reh'g denied*, 423 U.S. 1039, 96 S.Ct. 577, 46 L.Ed.2d 414 (1975) (faced with a similar "takings" argument, the court summarily rejected this and other arguments as being frivolous, despite failing to directly address the Fifth Amendment issue). All of the authorities relied upon by Center Art in making its "takings" argument are completely inapposite, since movant's cited cases deal only with the eminent domain context, i.e. land forfeitures or condemnation. Thus, the grand jury subpoena now in dispute is not the kind of governmental intrusion on property interests to which the Fifth Amendment affords protection. *Cf. Dionisio*, 410 U.S. at 10, 93 S.Ct. at 770. The government merely will be using the artwork tempo-

rarily as evidence during the course of its grand jury proceedings, a use of evidence altogether common in our criminal justice system. Once the grand jury proceedings are completed, these works will be returned to Center Art with their full value intact. Thus, Center Art's "takings" argument fails to be grounded upon a meritorious foundation.

## IV. THE FIRST AMENDMENT ISSUE OF PUBLIC DISPLAY

■ As with its previous Fifth Amendment argument, Center Art's final contention is relevant only to the "81 Images" subpoena. Specifically, Center Art reincorporates its identical First Amendment argument which already has been rejected by this court on a previous motion. *See* Order Affirming Magistrate's Order, Misc. No. 87–0060 (October 21, 1987). In rehashing this argument, Center Art again contends that the compelled production of actual artworks, in compliance with government subpoenas, would violate the First Amendment by inhibiting protected expression and the communication of ideas—in this case, the public display and sale of artwork. In previously rejecting Center Art's First Amendment argument, this court noted the following in its lengthy consideration of the issue:

> [Center Art] has failed to cite any case, state or federal, upholding a First Amendment privilege with regard to a grand jury subpoena ...

*Id.* at 9. Since Center Art has proffered no new authority to support its First Amendment argument, the court again rejects the gallery's attempt to use the First Amendment as a shield to protect itself from its duty to comply with the grand jury process.

## CONCLUSION

Accordingly, the court GRANTS Center Art's motion to quash the "Dali and Other Artist" subpoena on the basis of overbreadth and burden. For the same reasons, the court also GRANTS Center Art's motions to quash the three "Celebrity Artists" subpoenas. However, Center Art's motions to quash the "81 Images" and

"Three Images" subpoenas are DENIED, so that the movant now must comply with the grand jury process to this extent.

IT IS SO ORDERED.